CARTERET ACADEMY, AN ASSOCIATION NOT FOR PECUNIARY PROFIT, INCORPORATED UNDER THE LAWS OF NEW JERSEY, PROSECUTOR, v. THE STATE BOARD OF TAXES AND ASSESSMENT AND THE CITY OF ORANGE, RESPONDENTS.

Argued January 21, 1926—Decided July 2, 1926.

1. Exemptions from the burden of taxation are only favored in legislation upon the theory that the concession is due as *quid pro quo* for the performance of a service essentially public, and by which the state is relieved, *pro tanto*, from performing. Without that concurring prerequisite exemptions become a gift of public funds, and, as such, indefensible upon grounds of public policy and constitutional limitations. Among such admissible exemptions are works of charity and education, freely and charitably bestowed.

2. Statutes exempting persons or property from taxation are strictly construed, and exemptions must be denied unless it be clearly shown that the property or persons are entitled to the exemption.

3. An educational institution which changes its charter and by-laws in the endeavor to exempt its property from taxation, as not being used for profit, after a decision by the court, upon *certiorari*, that its property was not exempt, and which effects thereby no essential difference in the use of its property, is not entitled to exemption from taxation, especially when a somewhat similar change of form, but not of substance, had been made prior to such decision.

---

On *certiorari* to review judgments of the state board of taxes, &c.

Before Justices PARKER, MINTURN and BLACK.

For the prosecutor, *Robert H. McCarter.*

For the city of Orange, *William C. Calhoun.*

The opinion of the court was delivered by

MINTURN, J. This is a *certiorari* to review an assessment of taxes imposed upon the land and buildings owned by the prosecutor, and occupied by it as a school. The premises are in the city of Orange. A similar assessment for the year 1921 was reviewed and sustained by this court in *Carteret Academy* v. *State Board of Taxes and Assessment,* affirmed by the Court of Errors and Appeals, 98 *N. J. L.* 868. That opinion held that the proofs then adduced did not satisfy the court that the purpose and objects of the school were fundamentally charitable or philanthropic, and, hence, the court sustained the finding of the state board of taxes to the same effect.

It is now contended by the prosecutor that the facts elicited demonstrate that this school during the years for which this assessment was imposed was directly within the exemption allowed by the statute to schools; that the charter and by-laws have been amended to demonstrate the fact that the school is not intended to operate for profit, but that the school has in fact been run at an annual loss, which has been met in part by voluntary contributions from its friends and patrons. The entire management is in the hands of trustees organized by bondholders and parents, who give their time and services without any compensation. The officers of the company are not paid; the teaching force is paid as much as the school can afford to pay in competition with other good schools. Contributions have voluntarily been made from time to time to make up the annually recurring deficit, and an endowment has been created. A few pupils are taught without expense, and persons interested in the school assist at the lunch counter without compensation.

Since the determination of the last case, involving a similar claim, the Carteret Academy underwent the following change in its factual and legal condition, but no change in its property status: On June 29th, 1923, it filed with the secretary of state an amendment of its charter, in which it stated that its objects were fundamenally philanthropic, charitable and educational, and that it should not be conducted for the profit or gain of any corporation or individual, and that in the event of receipts for tuition being greater than its expenditure at any time, the excess should be used to reduce the cost of tuition, to provide free scholarships, or for other educational, philanthropic and charitable purposes, and that if it should cease to conduct a school, the property or funds then remaining in its possession should be devoted by its trustees to educational purposes, which should be charitable in character, and in no event should they be devoted to the profit or gain of any member of the corporation or of any other person.

It also, on May 28th, 1923, amended its by-laws so that no person in receipt of a salary from the corporation should be entitled to vote as a member at any meeting of the corporation, and that in the event of the corporation ceasing to conduct a school for the general education of boys, any property or funds then remaining in its possession shall be devoted by the trustees to educational purposes, which shall be charitable in character, and in no event shall such property or funds be devoted to the profit or gain of any member of the corporation or of any other person.

Upon this state of facts the state board of taxes and assessment affirmed assessments for taxes upon this property for the years 1923 and 1924. From this assessment the prosecutor appeals, claiming exemption under the provisions of section 203, subdivision 4 of the Tax act of 1918, as amended by *Pamph. L., ch.* 276, exempting schools, colleges, &c., under certain circumstances from taxation. Exemption from taxation is a privilege accorded by the people to an institution in recognition of the fact that the institution as *quid pro quo* for the concession is practically performing a public work essentially of service to the state,

without hope or expectation of remuneration for the service thus performed. When an institution functions as a business concern, with the economic factor of profit, instead of the legislative conception of philanthropy as the basis for its existence, it *ipso facto* eliminates itself from the legislative purview of exemption. The legislature has emphasized this essential by the language employed in describing the exemption, viz., "provided the same are not conducted for profit."

This court and the Court of Errors and Appeals have elucidated that principle and refused the exemption in various school cases, in which the claim for exemption was presented upon a basis equally as cogent and compelling as the present case. *Stevens Institute* v. *Bowes, 78 N. J. L.* 205; *Montclair* v. *State Board, 86 Id.* 497; *Carteret Academy* v. *Orange, supra.*

The last case cited presents the factual status of this prosecution before this court, and the Court of Errors and Appeals, when its previous claim for exemption was made, and where we stated our conclusion to be that "the present case is in its main and controlling features akin" to the Montclair case, where the assessment was upheld.

We are unable to perceive that the present amendment to the certificate of incorporation, and the by-laws, has been sufficiently radical and potent to give to this school the philanthropic essential which was lacking in its last claim for exemption, and without which as the dominating characteristic of its purpose and organic life, it can lay no claim to philanthropy, as the moving cause of its existence.

Exemptions from the burdens of taxation, which the great masses of the people are called upon to sustain, as a requisite of civil government, are only favored in legislation, upon the theory that the concession is due as *quid pro quo* for the performance of a service essentially public, and which the state thereby is relieved *pro tanto* from the necessity of performing, such as works of charity and education, freely and charitably bestowed, as evidenced by the legislation under consideration. Without that concurring prerequisite, an exemption becomes essentially a gift of public funds at the expense of the taxpayer, and indefensible both under our

public policy of equal taxation and our constitutional safeguard against illegal taxation. 2 *Kent Com.* 331.

Thus, says Dillon: "As the burden of taxation ought to fall equally upon all, statutes exempting persons or property are construed with strictness, and the exemption should be denied to exist, unless it be so clearly granted as to be free from fair doubt. Such statutes will be construed most strongly against those claiming the exemption." 4 *Mun. Corp.* 2443, and cases cited.

To the same effect are *Y. M. C. A.* v. *Orange,* 128 *Atl. Rep.* 580; *Mausoleum Builders* v. *State Board,* 88 *N. J. L.* 592; *affirmed,* 90 *Id.* 163.

The adjudication in this court upon which reliance for such exemptions is quite generally predicated is *Princeton* v. *State Board,* 96 *N. J. L.* 334. But, manifestly, this court there found the statutory essentials which constitute the basis for such an application, *i. e.,* the absence of profit in those interested, and the existence of a status of self-abnegation and sacrifice upon the part of all concerned in the interest of the local public good, very much as was found in *Institute of Holy Angels* v. *Bender,* 79 *Id.* 34. *Per contra,* in this instance, this court found, upon a former application by this prosecutor, that "changing its corporate dress and altering its financial system so that the net income is disbursed for interest instead of dividends," was not sufficient to warrant an exemption. Viewed in this light, we observe no difference essentially, except in form, between the former situation and that now presented, and the case, therefore, becomes *res judicata.* As to the 1923 tax no valid claim can be made, since the assessment under the Tax act was imposed upon the 1st day of October of 1922, and the changes in the charter and by-laws of the prosecutor were not effective until the months of May and June of 1923. As to the tax for 1924, for the reasons advanced, we observe no substantial difference in the philanthropic or charitable aspect for taxation purposes between the former and present status of the prosecutor.

The judgment of the state board will therefore be affirmed.