13 A.3d 886

SOCIETY OF THE HOLY CHILD JESUS D/B/A OAK KNOLL
SCHOOL, PLAINTIFF–APPELLANT, v. CITY OF
SUMMIT, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 28, 2010—Decided February 17, 2011.

Before Judges CARCHMAN, GRAVES [1] and MESSANO.

*Christopher John Stracco* argued the cause for appellant (*Day Pitney, LLP,* attorneys; *Mr. Stracco* and *Jennifer Gorga Capone,* on the brief).

[1] Judge Graves did not participate in oral argument. However, the parties consented to his participation in the decision.

*Garry J. Roettger* argued the cause for respondent (*Skoloff & Wolfe, P.C.,* attorneys; *Saul A. Wolfe,* of counsel; *Mr. Roettger,* on the brief).

The opinion of the court was delivered by

MESSANO, J.A.D.

Plaintiff, Society of the Holy Child Jesus, appeals from a final order of the Tax Court affirming the revocation of a long-standing tax exemption on property plaintiff owned in the City of Summit (Summit). In a published opinion, the trial judge denied plaintiff's summary judgment motion, determining that "the use of the property in violation of the zoning ordinance ... result[ed] in a denial of its tax exemption." *Soc'y of the Holy Child Jesus v. Summit City,* 23 *N.J. Tax* 528, 530 (Tax 2007). The final judgment we review was entered on September 22, 2009, incorporated the broad outlines of the parties' ultimate settlement and further "determined that the property was not entitled to exemption."

The sole issue presented on appeal is whether a municipality may revoke an exemption provided by *N.J.S.A.* 54:4–3.6 (the Statute) because the property, although otherwise qualified, is used in a manner not permitted by the municipal zoning ordinance. We conclude that if the taxpayer complies with the requirements of the Statute, it is entitled to the exemption from real property taxes even if the use of the property does not comply with the municipal zoning ordinance. We therefore reverse the judgment of the Tax Court.

I.

We provide some factual and procedural background that is largely not disputed, some of which is set forth in the Tax Court's opinion.

Plaintiff was incorporated in New Jersey in 1898 as a non-profit entity affiliated with the Holy Roman Catholic Church and organized "for the moral and mental improvement of women, [and] for

religious, charitable and literary purposes." It owns and operates the Oak Knoll School of the Holy Child, a Catholic institution that provides an education for both boys and girls from kindergarten through the sixth grade, and for girls from the seventh through twelfth grades. The property on which the main school buildings are situated—Lots 3 and 4 in Block 3103 on the Summit tax map—are indisputably exempt from taxation and not the subject of this appeal.

Plaintiff also owns adjacent property designated as Lot 1 in the same block (the property), upon which a two and one-half story home is situated. Originally purchased by plaintiff in 1943, and used prior thereto as a single-family residence, the building was used as a residence for nuns until sometime in 2000. The property was exempt from real estate taxes during this time.

Sometime in 2000, plaintiff discontinued the use of the property as a residence but continued to use the building for school purposes, including meetings of the school's board of trustees, parties and assemblies and as office space for the school's facilities director. Apparently prompted by complaints from neighbors that the property was actually vacant, Summit's tax assessor investigated the premises and concluded it was not in use. Summit revoked the property's exemption effective July 1, 2004, and issued an assessment of $924,400. Plaintiff filed a complaint in the Tax Court challenging the assessment, though it voluntarily dismissed the complaint soon thereafter when the exemption was restored.

In October 2005, Summit sent plaintiff an "added assessment tax bill for [the] property . . . for the following quarters: November 1, 2005, February 1 & May 1, 2006." The property was again assessed at $924,400. Plaintiff filed another complaint in the Tax Court seeking to restore the exemption, or alternatively, a reduction in the assessment for year 2005. When Summit served plaintiff with a notice of assessment for year 2006, plaintiff filed another complaint requesting similar relief for tax year 2006. Plaintiff successfully enjoined the sale of the property for unpaid

taxes, and, in May 2006, moved for summary judgment on its complaint for tax year 2005.

On October 24, 2006, while plaintiff's motion was pending, Summit's zoning officer, Christa Anderson, notified plaintiff in writing that the "us[e] [of] the . . . property in conjunction with school operations . . . [was] contrary to the provisions" of the municipal zoning ordinance. Anderson further explained that the property was "located in a single[-]family residential zone wherein educational institutions are a permitted conditional use." She advised that "[i]n order to properly and legally conduct a conditional use on the site, it [wa]s necessary for the school to obtain an approval from the Zoning Board of Adjustment." Anderson also certified that she had orally advised plaintiff on more than one occasion in the prior two years of the need to seek a conditional use variance. *See N.J.S.A.* 40:55D–70(d)(3).

On October 25, in a letter to the trial judge, Summit's counsel summarized an argument he intended to advance in opposition to plaintiff's summary judgment motion:

> [T]he City will contend that the [plaintiff's] use [of the property] is illegal and that[,] therefore, [plaintiff] does not qualify for an exemption from taxation, although if the use were a permitted use, it would otherwise qualify.

Plaintiff then filed a second motion, denominated as one seeking "declaratory relief," asking the Tax Court to declare that it was entitled to an exemption for tax years 2005 and 2006. Oral argument on the motions occurred in January 2007 and the trial judge issued his written opinion on September 12.

The judge noted that the issue was one of "first impression in New Jersey." *Soc'y of the Holy Child Jesus, supra,* 23 *N.J. Tax* at 532. However, he analogized the situation "to the failure to meet local land use requirements when farmland assessment is sought." *Ibid.* The judge concluded that "[f]or preferential farmland assessment under *N.J.S.A.* 54:4–23.1 to –23.23 ('The Farmland Assessment Act'), 'property used in violation of a municipality's zoning ordinance cannot qualify. . . .'" *Ibid.* (quoting *Cheyenne Corp. v. Twp. of Byram,* 248 *N.J.Super.* 588, 595, 591

A.2d 991 (App.Div.1991), *certif. denied*, 137 *N.J.* 312, 645 *A.2d* 140 (1994)). The judge concluded:

> I find no basis for distinguishing the rule as to disqualification for preferential farmland taxation because of non-permitted use under a municipal zoning ordinance from the disqualification of school use (or other uses set forth in *N.J.S.A.* 54:4–3.6) for preferential exemption from taxation because of non-permitted use under municipal zoning ordinances.
>
> [*Soc'y of the Holy Child Jesus, supra*, 23 *N.J. Tax* at 532.]

The judge consequently denied plaintiff's motions but without prejudice to its right to proceed to trial on the issue of whether its use of the property complied with the zoning ordinance.

However, the matter did not proceed to trial. We are advised that plaintiff, after an unsuccessful challenge to the zoning officer's determination before the Board of Adjustment, applied for and was granted necessary variances for the property to meet the requirements for a conditional use under Summit's ordinance. The property's tax exemption was restored in 2010.

 The parties ultimately settled their dispute for all tax years subsequent to 2005. Additionally, as part of the settlement, plaintiff and Summit entered into a "high-low" agreement for tax year 2005, employing two assessment values, one of which would be applied depending upon which party prevailed in this appeal.[2]

---

[2] Generally, interlocutory orders are appealable only if there is a cognizable appeal from a final judgment resolving all issues as to all parties. *N.J. Sch. Constr. Corp. v. Lopez*, 412 *N.J.Super.* 298, 308, 990 *A.2d* 667 (App.Div.2010). A final judgment entered pursuant to the parties' consent is generally not reviewable as of right. *Ibid.; see also CPC Int'l, Inc. v. Hartford Accident & Indem. Co.*, 316 *N.J.Super.* 351, 365–66, 720 *A.2d* 408 (App.Div.1998) (explaining that plaintiff cannot voluntarily dismiss remaining claims without prejudice to make interlocutory summary judgment order appealable as of right), *certif. denied*, 158 *N.J.* 73, 726 *A.2d* 937 (1999). "[O]ur courts will not issue an advisory opinion if there is no genuine controversy between the parties, and for a question to be justiciable, there must be an actual dispute between parties who have a sufficient stake in the outcome." *Janicky v. Point Bay Fuel, Inc.*, 410 *N.J.Super.* 203, 208, 981 *A.2d* 96 (App.Div.2009) (quotation omitted).

Here, the parties have "a sufficient stake in the outcome" of this appeal because plaintiff's actual financial obligation for tax year 2005 will depend upon our resolution of its appeal.

## II.

▮ The judge's decision was purely a legal one to which we owe no deference. *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995). Issues of statutory interpretation are reviewed de novo. *Twp. of Holmdel v. N.J. Highway Auth.,* 190 *N.J.* 74, 88, 918 *A.*2d 603 (2007).

▮ Plaintiff contends that it was entitled to a property tax exemption because: 1) it qualified under the clear and unambiguous provisions of the Statute; 2) any violation of Summit's zoning ordinance cannot serve as a basis to revoke the exemption; 3) the judge erred in utilizing precedent decided under the Farmland Assessment Act (the FAA) because the policy supporting that legislation differs significantly from the public policy supporting the Statute; and 4) the use of zoning powers to deny exemptions would foster "unscrupulous municipal action" and subvert those public policy goals.

Summit counters by arguing that any illegal use of the property prohibits eligibility for the tax exemption because there is "a vital nexus between zoning and taxation in New Jersey." Summit also contends that plaintiff seeks relief from a "self-induced harm caused by its failure to turn square corners," i.e., seek conditional use approval and any required variances.

▮ We start our analysis by examining the statutory framework. "All real property within New Jersey is subject to taxation ... unless expressly exempted by the Legislature[.]" *Twp. of Holmdel, supra,* 190 *N.J.* at 87, 918 *A.*2d 603 (citations omitted). The grant of legislative power to exempt certain real property from taxation finds its roots in our Constitution, which provides:

Exemption from taxation may be granted only by general laws.... *Exemptions from taxation may be altered or repealed, except those exempting real and personal property used exclusively for religious, educational, charitable or cemetery purposes ... and owned by any corporation or association organized and conducted exclusively for one or more of such purposes and not operating for profit.*

[*N.J. Const.* art. VIII, § I, ¶ 2 (emphasis added).]

Subject to certain exceptions that are irrelevant here, the Statute exempts from taxation "all buildings actually used for ... schools" and "all buildings actually used in the work of associations and corporations organized exclusively for religious purposes, including religious worship, or charitable purposes" as long as the "association, corporation or institution claiming the exemption owns the property in question and is ... authorized to carry out the purposes on account of which the exemption is claimed." *N.J.S.A.* 54:4-3.6.

 The Court has noted,

> Judicial interpretation of statutory tax exemptions is governed by principles of general statutory construction. Thus, when interpreting a statutory tax exemption, the Legislature's intent is the paramount goal ... and, generally, the best indicator of that intent is the statutory language.
>
> [*Twp. of Holmdel, supra,* 190 *N.J.* at 87, 918 *A.*2d 603 (citation and quotations omitted).]

Further,

> Tax-exemption statutes are strictly construed against those claiming exemption because of the compelling public policy that all property bear its fair share of the burden of taxation. However, strict construction does not require a rigid scholastic interpretation.... *The rule of strict construction must never be allowed to defeat the evident legislative design.* Nonetheless, taxation is the rule, and the claimant bears the burden of proving an exemption.
>
> [*N.J. Carpenters Apprentice Training & Educ. Fund v. Borough of Kenilworth,* 147 *N.J.* 171, 177–78, 685 *A.*2d 1309 (1996) (emphasis added) (citations and quotations omitted), *cert. denied,* 520 *U.S.* 1241, 117 *S.Ct.* 1845, 137 *L.Ed.*2d 1048 (1997).]

The "legislative design" of the Statute has been long-recognized as "[a] concession ... due as quid pro quo for the performance of a service essentially public, and which the state thereby is relieved ... from the necessity of performing." *Carteret Acad. v. State Bd. of Taxes & Assessment,* 102 *N.J.L.* 525, 528, 133 *A.* 886 (Sup.Ct.1926), *aff'd,* 104 *N.J.L.* 165, 138 *A.* 919 (E. & A.1927); *accord The Kimberley Sch. v. Town of Montclair,* 137 *N.J.L.* 402, 404–05, 60 *A.*2d 313 (Sup.Ct.1948), *rev'd on other grounds,* 2 *N.J.* 28, 65 *A.*2d 500 (1949); *Job Haines Home for the Aged v. Twp. of Bloomfield,* 19 *N.J. Tax* 408, 417 (Tax 2001), *aff'd* 20 *N.J. Tax* 137 (App.Div.2002); *see also Grace & Peace Fellowship Church, Inc.*

*v. Cranford Twp.,* 4 *N.J. Tax* 391, 399 (Tax 1982) (noting the *"raison d'etre* for statutory exemptions from taxation is the benefit conferred upon the public by such religious, charitable or other similar institutions and the consequent relief, ... of the burden imposed on the State to care for and advance the interest of its citizens"). Indeed, the Supreme Court has noted in another context, "[t]he exemption is granted by the State because of the contribution of the exempt facility to the public good." *Roman Catholic Diocese of Newark v. Ho–Ho–Kus Borough,* 42 *N.J.* 556, 566, 202 *A.*2d 161 (1964) (*Ho–Ho–Kus I* ).

 The Statute "requires three criteria for exemption, '(1) [the owner of the property] must be organized exclusively for the [exempt purpose]; (2) its property must be actually and exclusively used for the tax-exempt purpose; and (3) its operation and use of its property must not be conducted for profit.'" *Hunterdon Med. Ctr. v. Twp. of Readington,* 195 *N.J.* 549, 561, 951 *A.*2d 931 (2008) (alterations in original) (quoting *Paper Mill Playhouse v. Millburn Twp.,* 95 *N.J.* 503, 506, 472 *A.*2d 517 (1984)). The *Paper Mill* standard has been specifically applied to religious organizations, such as plaintiff. *Ibid.* (citing *Roman Catholic Archdiocese of Newark v. City of E. Orange,* 18 *N.J. Tax* 649, 653 (App.Div. 2000)). And, property used for school purposes by a non-profit organization is exempt under the Statute. *N.J. Carpenters, supra,* 147 *N.J.* at 178, 685 *A.*2d 1309; *The Kimberley School, supra,* 2 *N.J.* at 37, 65 *A.*2d 500. In this case, it is not disputed that the property, and plaintiff's use of it, met the statutory criteria for exemption.

Nevertheless, Summit urged, and the trial judge accepted, that despite the clear and unambiguous language of the Statute, it was subject to interpretation. We note that in this regard, the argument did not rest upon extrinsic devices traditionally used to interpret legislation. *See, e.g., DiProspero v. Penn,* 183 *N.J.* 477, 492–93, 874 *A.*2d 1039 (2005) (quoting *Cherry Hill Manor Assocs. v. Faugno,* 182 *N.J.* 64, 75, 861 *A.*2d 123 (2004)) (listing such

extrinsic interpretive aids as "legislative history, committee reports, and contemporaneous construction").

Instead and in particular, the trial judge analogized case law decided under the FAA and concluded that plaintiff was not entitled to an exemption because its use of the property as part of an educational institution violated the municipal zoning ordinance. At the time of the judge's opinion, the issue of whether the property conformed to the zoning ordinance was unresolved, and he correctly concluded that "for purposes of th[e] motion," "the legality of school use of the ... property," needed to be "resolv[ed] ... against the plaintiff." *Soc'y of the Holy Child Jesus, supra,* 23 *N.J. Tax* at 531. Based upon the arguments before us, there is no objection to our consideration of additional indisputable facts to supplement the record in this regard.

Summit's ordinance permitted two uses by right in the zone where the property is located: detached single-family dwellings; and public parks and playgrounds. "Educational institutions" were "conditional uses" permitted in the zone. *See N.J.S.A.* 40:55D-3 (" 'Conditional use' means a use permitted in a particular zoning district only upon a showing that such use in a specified location will comply with the conditions and standards for the location or operation of such use as contained in the zoning ordinance, and upon the issuance of an authorization therefor by the planning board."). Summit's ordinance included specific conditions and standards for the conditional use of any property as an educational institution, including minimum lot area and lot frontage. In both these respects, plaintiff's property was deficient.

In *Byram Twp. v. Western World, Inc.,* 111 *N.J.* 222, 544 *A.2d* 37 (1988), the Supreme Court addressed the issue of whether property otherwise qualified for farmland assessment could nonetheless be denied such favorable treatment if in violation of a municipal zoning ordinance. Noting that the taxpayers' property "clearly qualified for farmlands assessment," the Court reversed the decision of the Tax Court that denied the assessment because "the taxpayers' use of their property for the production and sale of

trees and forest products was a prohibited use under the Byram Township zoning ordinance." *Id.* at 230, 544 *A.2d* 37.[3] The Court concluded that "the record before the Tax Court was plainly insufficient to establish that the taxpayers' current use of the property violate[d] the zoning ordinance, and further, that the Township had the burden of proving the ineligibility of the property based on zoning nonconformity." *Id.* at 230–31, 544 *A.2d* 37. The Court went on to note

> Nothing in the [FAA] requires the taxpayer affirmatively to prove the legality of the use of the property.... The focus of the statute is exclusively on the actual use of the property. While this focus does not preempt a legitimate exercise by a municipality of its zoning power to prohibit such activity, this fact does not elevate the legality of the use to an element of the [FAA].
> [*Id.* at 236, 544 *A.2d* 37 (citations omitted).]

Further noting that "[t]he burden of proving illegality of use and its impact on the tax status of property ... [wa]s properly placed on Byram Township[,]" the Court characterized the municipality's "legitimate interest in th[e] proceeding [as] limited to preventing prohibited uses, not preventing the assessment of property as farmland." *Ibid.* "[I]n the absence of any proper adjudication that the use of such property [wa]s itself unlawful," the Court concluded that the farmland assessment should be reinstated. *Id.* at 237, 544 *A.2d* 37. However, the Court further noted, that "[its] ruling ... d[id] not prevent the municipality from attempting to make a sufficient showing in later tax years." *Id.* at 235, 544 *A.2d* 37.

That is precisely what happened, and we addressed the issue again in *Cheyenne Corp., supra,* 248 *N.J.Super.* at 594, 591 *A.2d* 991. There, we squarely "consider[ed] whether property devoted to agricultural or horticultural use in violation of a local zoning ordinance can qualify for farmland assessment." *Id.* at 594–95, 591 *A.2d* 991. We specifically quoted our earlier decision in *Clearview Estates, Inc. v. Borough of Mountain Lakes,* 188 *N.J.Super.* 99, 105, 456 *A.2d* 111 (App.Div.1982), where "we held that 'land used in violation of the local zoning ordinance can[not]

---

[3] We had affirmed the Tax Court's judgment in an unreported decision. *Id.* at 224, 981 *A.2d* 96.

qualify for farmland assessment.'" *Cheyenne Corp., supra*, 248 *N.J.Super.* at 595, 591 *A.*2d 991 (alteration in original). "[S]uperimposed upon the requisites of the [FAA] was the requirement that the agricultural or horticultural use must be lawful; it must be a permitted use under the municipality's zoning ordinance." *Ibid.* We further observed,

> [W]e are convinced that a violation of the municipality's zoning ordinance is cognizable in the Tax Court in determining farmland assessment qualifications even in the absence of a separate antecedent action. Concerns of judicial integrity are implicated. The Tax Court should not passively lend its aid to a taxpayer's zoning noncompliance. Nor should it accord favored treatment to an undeserving owner of land. Innocent taxpayers should not be required to shoulder an extra financial burden merely because a municipality has previously defaulted in its obligation to enforce its zoning ordinance.
>
> [*Id.* at 596–97, 591 *A.*2d 991 (citation omitted).]

Our holding in *Cheyenne Corp.* has been subsequently adopted and applied by the Tax Court. *See, e.g., Sudler Lakewood Land, LLC v. Lakewood Twp.*, 18 *N.J. Tax* 451, 460–63 (Tax 1999), *aff'd*, 19 *N.J. Tax* 305 (App.Div.2001).

A number of cases seemingly distinguish themselves from *Cheyenne Corp.* based upon the nature of the zoning violation. *See, e.g., Terhune v. Twp. of Franklin*, 107 *N.J.Super.* 218, 222, 258 *A.*2d 18 (App.Div.1969) (permitting assessment despite the property's failure to satisfy minimum lot size requirements); *White v. Borough of Bernardsville*, 9 *N.J. Tax* 110, 116–17 (Tax 1986) (permitting the favorable assessment despite the existence of a structure that violated the zone's set-back requirement), *aff'd o.b.*, 9 *N.J. Tax* 122 (App.Div.), *certif. denied*, 107 *N.J.* 639, 527 *A.*2d 460 (1987); *Mt. Hope Mining Co. v. Rockaway Twp.*, 8 *N.J. Tax* 570, 579–83 (Tax 1986) (permitting the assessment despite the failure to obtain municipal tree removal permit). In each of these instances, however, the *use* of the property as farmland was permitted by the zoning ordinance. Of course in the case at hand, plaintiff's use of the property as an educational institution was not a permitted use, but, rather, was only recognized as a conditional use subject to approval and requisite variances.

■ To the extent that plaintiff has urged that "technical" violations of the Municipal Land Use Law, *N.J.S.A.* 40:55D–1 to 112 (the MLUL), such as those that existed in the above-cited cases, should not result in a loss of exemption under the Statute, we reject the argument. "[O]rdinarily zoning violations should be tried in a tribunal other than the Tax Court." *Cheyenne Corp., supra,* 248 *N.J.Super.* at 596, 591 *A.*2d 991. Requiring the Tax Court to evaluate the nature of the zoning violation before deciding whether the property is exempt might lead to inconsistent applications of the Statute. For the reasons that follow, we conclude a bright-line rule better serves the public interests that undergird the Statute.

## III.

Plaintiff acknowledges the precedent developed under the FAA. However, it contends that those cases are limited to the FAA, and, thus, not controlling in this instance. Indeed, as plaintiff emphasizes, the differences between the FAA and the Statute are manifest. For example, the FAA provides for tax reduction rather than tax exemption; it sets forth a specific use requirement, unlike the Statute which permits a multitude of exempt uses; and, also unlike the Statute, the FAA permits favorable tax treatment in connection with for-profit enterprises. *See N.J.S.A.* 54:4–23.3 ("Land shall be deemed to be in agricultural use when devoted to the production *for sale* of plants and animals useful to man . . . .") (emphasis added).

Despite those obvious distinctions, our courts have analogized eligibility for farmland assessment to eligibility for exemption under the Statute. "[P]referential treatment [under the FAA] is substantially similar to an exemption from taxes, and the [FAA] is therefore strictly construed against the party seeking [its] tax benefits." *Brighton v. Rumson Borough,* 22 *N.J. Tax* 39, 52 (Tax 2005), *aff'd,* 23 *N.J. Tax* 60 (App.Div.2006); *see also, Van Wingerden v. Lafayette Twp.,* 18 *N.J. Tax* 81, 94 (Tax 1999), *aff'd,* 335 *N.J.Super.* 560, 763 *A.*2d 294 (App.Div.2000); *Wishnick v. Upper*

*Freehold Twp.*, 15 *N.J. Tax* 597, 606 (Tax 1996); *Borough of Califon v. Stonegate Props. Inc.*, 2 *N.J. Tax* 153, 163 (Tax 1981). The trial judge, therefore, concluded that "distinctions [between the FAA and the Statute were] without legal significance." *Soc'y of the Holy Child Jesus, supra*, 23 *N.J. Tax* at 535–36. We disagree with this conclusion.

In *Western World, supra*, 111 *N.J.* at 228–29, 544 *A.*2d 37, the Court noted:

> The public policy behind the special treatment of farmland for tax purposes was clearly articulated to be an effort to *slow the transition in New Jersey from open and undeveloped land to developed land.* The proposed amendment *sought to foster agriculture* in the State for the good of the general economy, *ameliorate problems of urban growth in rural municipalities, and encourage the preservation of open spaces.*
>
> [ (Emphasis added) (citation omitted).]

Permitting a taxpayer to seek favorable farmland assessment fosters public policy goals similar to a number of those recognized by the MLUL. One need only examine some of the general purposes of the MLUL to see the connection.

*N.J.S.A.* 40:55D–2 provides in pertinent part:

> It is the intent and purpose of th[e] [MLUL]: (a) To encourage municipal action *to guide the appropriate use or development of all lands in this State,* in a manner which will promote the public health, safety, morals, and general welfare; ... (c) *To provide adequate* light, air and *open space;* ... (g) *To provide sufficient space in appropriate locations for a variety of agricultural,* residential, recreational, commercial and industrial *uses and open space, both public and private,* according to their respective environmental requirements in order to meet the needs of all New Jersey citizens; ... (j) *To promote the conservation of ... open space, ...* and valuable natural resources in the State and *to prevent urban sprawl* and degradation of the environment through improper use of land;....
>
> [Emphasis added.]

We recognized the concurrent policy goals of the FAA and the MLUL in *Kinnelon v. South Gate Assocs.*, 172 *N.J.Super.* 216, 411 *A.*2d 724 (App.Div.), *certif. denied sub nom., Kinnelon v. Smoke Rise of Kinnelon*, 85 *N.J.* 94, 425 *A.*2d 260 (1980). There we held that "the [FAA] does not preclude municipalities from prohibiting, restricting or conditioning the use of property for commercial farming or timbering operations where appropriate in light of the considerations legislatively mandated by *N.J.S.A.* 40:55D–2,

N.J.S.A. 40:55D–62 and other applicable provisions of the [MLUL]." *Id.* at 218, 411 *A.*2d 724. Further noting that the provisions of *N.J.S.A.* 40:55D–2(g) and (j) were "but some of the various considerations critical to the adoption of zoning plans and zoning ordinances[,]" we held that "[t]hey are not the exclusive criteria under the [MLUL], nor d[id] they become the exclusive or overriding criteria by reason of the [FAA]." *Id.* at 219, 411 *A.*2d 724.[4]

The connection between the MLUL and the specific use of land as "farmland" has been recognized in other contexts. *See e.g., Twp. of Franklin v. Hollander,* 338 *N.J.Super.* 373, 392–93, 769 *A.*2d 427 (App.Div.2001) (recognizing the preemptive effect of the Right to Farm Act, *N.J.S.A.* 4:1C–1 to –10.4, upon local zoning ordinances, but requiring consideration of those ordinances to harmonize that statute with the underlying goals of the MLUL), *aff'd,* 172 *N.J.* 147, 796 *A.*2d 874 (2002). And, the MLUL itself exempts from the definition of "subdivision" the "divisions of land ... for agricultural purposes where all resulting parcels are 5 acres or larger in size." *N.J.S.A.* 40:55D–7. Thus, Summit's contention that there is "a vital nexus between zoning and taxation in New Jersey" is correct, at least with respect to the FAA.

However, targeting favorable tax treatment to specific property so as to achieve overall land use objectives is not, and never has been, the public policy behind the Statute. Its purposes are served without any connection between a specific use and a specific piece of property. Rather, the broader goal of the Statute, as noted above, is to compensate the taxpayer for "the contribution of the exempt facility to the public good." *Ho–Ho–Kus I, supra,* 42 *N.J.* at 566, 202 *A.*2d 161. Moreover, unlike the

---

[4] Indeed, the *Western World* Court recognized the nexus between the FAA and MLUL when it noted in dicta, "a finding that such activities are prohibited by the zoning ordinance would necessarily entail the further inquiry of whether an ordinance prohibiting such low intensity agricultural activity," otherwise qualifying under the FAA, "is a permissible exercise of the Township's powers under the [MLUL]." *Western World, supra,* 111 *N.J.* at 234, 544 *A.*2d 37.

FAA which rewards a taxpayer for performing an essentially private function, albeit with some public benefit, the Statute provides an exemption from real property taxes only if the public benefit is performed in a non-profit manner, i.e., without private economic benefit to the taxpayer. *Paper Mill, supra,* 95 *N.J.* at 506, 472 *A.*2d 517.

Significant precedent supports a more nuanced consideration of the connection between the public policy goals of the Statute and municipal zoning ordinances. These cases recognize that the legitimate goals of land use planning embodied in the MLUL and exercised at the municipal level are different from the objectives of the Statute.

▮▮▮▮ Schools and other educational institutions are clearly subject to municipal zoning ordinances. *Ho–Ho–Kus I, supra,* 42 *N.J.* at 562, 202 *A.*2d 161; *Twp. Comm. of Denville v. Bd. of Educ.,* 59 *N.J.* 143, 148–150, 279 *A.*2d 842 (1971). However,

> [A] school may not be barred from a municipality or from a zone solely because the tax exemption may be burdensome; nor may a variance be denied solely for that reason. *Educational institutions . . . are tax free as a matter of paramount State policy which cannot be thwarted by exclusionary zoning.*
>
> [*Denville, supra,* 59 *N.J.* at 150, 279 *A.*2d 842 (emphasis added) (citing *Ho–Ho–Kus I, supra,* 42 *N.J.* at 565–66, 202 *A.*2d 161).]

The tax-exempt organization must comply with the municipal zoning ordinance or seek relief under the MLUL. *Id.* at 151, 279 *A.*2d 842. And, if such an application is made, "the local authorities should consider the State policy favoring such exempt functions." *Roman Catholic Diocese of Newark v. Ho–Ho–Kus Borough,* 47 *N.J.* 211, 217, 220 *A.*2d 97 (1966) (*Ho–Ho–Kus II* ). However, as one commentator has noted, with certain limited exceptions, "the assessment of real property, pursuant to the provisions of Title 54 . . . is often considered a separate compartment of law, having no significant interaction with the MLUL." William M. Cox, *New Jersey Zoning and Land Use Administration* § 21–8 at 542 (2010); *see also Medical Ctr. at Princeton v. Twp. of Princeton Zoning Bd. of Adjustment,* 343 *N.J.Super.* 177, 202, 778 *A.*2d 482 (App.Div.2001) (recognizing, in dicta in a land

use case, "that tax exemptions and zoning concepts are disparate concepts" and "that the policy underlying a grant of tax exempt status to an ancillary function of a hospital serves a different purpose from a grant of favored treatment under zoning laws").

That is so because the MLUL provides the zoning board or planning board with the necessary standards by which to evaluate an application for relief from a municipal land use ordinance. And, more germane to the issue presented in this case, the MLUL provides the necessary tools so that a municipality may enforce compliance with its zoning ordinance. *N.J.S.A.* 40:55D–18 provides:

> In case ... any building, structure or land is used in violation of this act or of any ordinance or other regulation made under authority conferred hereby, the proper local authorities of the municipality or an interested party, in addition to other remedies, may institute any appropriate action or proceedings to prevent such unlawful ... use, ... to prevent the occupancy of said building, structure or land, or to prevent any illegal act, conduct, business or use in or about such premises.

"Generally, the 'proper local authority' is the municipal zoning officer." *Paruszewski v. Twp. of Elsinboro,* 154 *N.J.* 45, 53, 711 *A.*2d 273 (1998) (citation omitted). The zoning officer may also institute an action in the municipal court. Cox, *supra,* § 20–2 at 500. In either case, the enforcement mechanisms of the MLUL apply without regard to the tax status of any particular property.

Plaintiff and Summit have both urged us to consider the reported decisions of our sister states. Plaintiff, for example, cites *Pittsburgh v. Bd. of Prop. Assessment,* 50 *Pa. Cmwlth.* 25, 412 *A.*2d 661 (1980), for support. There, the court affirmed the grant of an exemption for a hospital's accessory use that was not a permitted use under the municipal zoning ordinance. *Id.* at 662. "The City argue[d] that the property has to be *legally* used for an exempt purpose in order to be tax exempt." *Ibid.* The court held:

> Despite its improper location in the city, the Hospital is not profiting from any wrongdoing; for in return for its exempt status, the Hospital is conferring benefits upon the community. The Hospital's failure to conform to the zoning regulations does not affect its ability to provide charitable services to the community. The City has accepted those services; now it must provide the exemption. Furthermore, violations of zoning regulations can and should be remedied in ways other than the denial of tax exemptions.

[*Id.* at 663.]

*Accord First Korean Church of N.Y., Inc. v. Montgomery Cnty. Bd.,* 926 *A.*2d 543, 547–48 (Pa.Commw.Ct.2006).

In *Assessors of Dover v. Dominican Fathers Province of St. Joseph,* 334 *Mass.* 530, 137 *N.E.*2d 225, 226 (1956), the local tax board denied an exemption to a religious order. The board argued that based upon the prior grant of a use variance, and the taxpayer's consent to a partial exemption, a contract arose between the parties, limiting the taxpayer's use of the property to that granted by the variance. *Id.* at 228. Due to a change in the law, however, "the taxpayer proceeded, as it had a right to do, to use the property for the purposes of a seminary. In exercising this right it had a right to take advantage of such exemptions as it might be entitled to under the tax laws." *Id.* at 229. Rejecting the board's argument, the court held:

The zoning and taxing statutes are separate and distinct, and each is separately administered. A property owner may or may not be entitled to a variance. Many factors have to be considered. But those relating to the subject of taxation and exemptions have no relevancy. If a board of appeals upon consideration of the relevant factors concludes that a property owner is entitled to a variance it should grant it. It has no right in doing so to attach conditions by contract or otherwise touching the subject of taxes or exemptions. Those are matters outside its jurisdiction. Moreover, what property is taxable and what is exempt is a subject covered by laws which are and must be general in their operation. They cannot be varied by a contract between the town and the taxpayer.

[*Ibid.*]

However, Summit relies on *Shmiel v. Assessor, Town of Ramapo,* 824 *N.Y.S.*2d 758 (N.Y.Sup.Ct.2006).[5] There, the court held that "[t]he use of the subject property in violation of zoning ordinances is a complete defense to the ... application for a tax exemption." *Ibid.* (quotations omitted) (citing *Oxford Group-*

---

[5] Our research reveals a cautionary statement noting that the opinion is uncorrected and will not be published in the printed official reports." *See* Pressler & Verniero, *Current N.J. Court Rules,* comment 2 on *R.* 1:36–3 (2011) ("Because a trial court is not bound by an unpublished opinion of an appellate court of this state, it is obvious that it is not bound by an unpublished opinion in another jurisdiction."). However, subsequent history does not reveal that the opinion was withdrawn from the official reporter.

*Moral Re–Armament, MRA, Inc. v. Sweet,* 309 *N.Y.* 744, 128 *N.E.*2d 759 (1955), and *Colella v. Bd. of Assessors of the Cnty. of Nassau,* 266 *A.D.*2d 286, 698 *N.Y.S.*2d 291 (N.Y.App.Div.1999), *rev'd on other grounds,* 95 *N.Y.*2d 401, 718 *N.Y.S.*2d 268, 741 *N.E.*2d 113 (2000)).

The *Shmiel* court, however, also relied upon the holding in *Legion of Christ, Inc. v. Town of Mount Pleasant,* 1 *N.Y.*3d 406, 774 *N.Y.S.*2d 860, 806 *N.E.*2d 973 (2004), which, in our opinion was entirely misplaced. In *Legion of Christ,* a religious organization sought an exemption for unimproved property upon which it intended to construct a religious "campus." *Id.* at 409–10, 774 *N.Y.S.*2d 860, 806 *N.E.*2d 973. The local tax board denied the exemption application because "[m]ere ownership of the property and proposed plans which are not 'crystallized' in the form of an application for approval do not, in and of themselves, mandate tax-exempt status of the property." *Id.* at 410, 774 *N.Y.S.*2d 860, 806 *N.E.*2d 973.

The court noted that unimproved property, otherwise entitled to an exemption, could still qualify if "the improvements [we]re in 'good faith contemplated.'" *Id.* at 411, 774 *N.Y.S.*2d 860, 806 *N.E.*2d 973 (quoting *Section 420–a* (3) of *N.Y. Real Property Tax Law* ). The town argued that the taxpayer's failure to apply for a "special permit," necessary to legally construct the improvements for the intended use, demonstrated its lack of "good faith." *Id.* at 412, 774 *N.Y.S.*2d 860, 806 *N.E.*2d 973. The Court disagreed, distinguishing its holding in *Oxford Group, supra,* by concluding:

> *Oxford* provides no support for the proposition that nonprofit organizations must acquire or apply for special permits to qualify for tax exemption on the basis of good faith. The additional requirement imposed by the Appellate Division that an applicant must possess a special use permit is also not found in section 420–a. We, therefore, reject the proposition that a special use permit is required as a condition precedent to a real property tax exemption pursuant to *Real Property Tax Law* § 420–a (3)(a).
>
> [*Ibid.*]

Instead, the court held that "[a]n application for a special use permit may well be a factor in determining good faith. A zoning authority may look to other criteria to determine if in fact a public

benefit improvement is contemplated and is the subject of concrete or definite plans." *Ibid.*

Summit also cites *Robbins v. Yusem,* 559 *So.*2d 1185 (Fla.Dist. Ct.App.), *review denied sub nom., Yusem v. Robbins,* 569 *So.*2d 1282 (Fla.1990). There, the court succinctly concluded:

No statute, judicial decision, or principle of equity permits us to sanction an illegal act by conferring upon the taxpayer substantial tax relief at the expense of other taxpayers. Accordingly, we conclude that, as a matter of law, agricultural use of property in violation of applicable zoning regulations cannot be considered "good faith" commercial agricultural use of the land entitling its owner to an agricultural exemption.

[*Id.* at 1188.]

But, *Robbins* was subsequently overruled by *Schultz v. Love PGI Partners, LP,* 731 *So.*2d 1270 (Fla.1999). The *Schultz* court determined, "Not having been included as a factor by the legislature, the zoned use of the land enters the analysis via the catchall factor that allows the taxing authority to consider any relevant factor not specifically mentioned." *Id.* at 1271 (citing § 193.461(3)(b)(7), *Fla. Stat.* (1993)). "Thus, making the good faith agricultural use determination based exclusively on zoned use as a matter of law, would violate the broad examination required by statute, which is properly focused on the actual physical use of the land." *Ibid.*

We conclude that the New York and Florida decisions cited by Summit ultimately turn on specific statutory qualifications involving the "good faith" of the taxpayer, either in obtaining the necessary permits to construct improvements, or in utilizing the land in a manner consistent with favorable tax treatment. Our Statute, of course, includes no "catchall factor," like Florida, to determine whether a taxpayer's use of the property is in good faith; our case law only requires that the taxpayer meet the *Paper Mill* standard. Additionally, our case law has directly addressed, in a variety of settings, the Statute's requirement that the property be "actually used" for exempt purposes. *See, e.g., Job Haines Home for the Aged, Inc. v. Twp. of Bloomfield,* 20 *N.J. Tax* 137, 138–40 (App.Div.2002) (affirming Tax Court finding of a continuous exempt use of property owned by a non-profit agency while

the facility was expanding and not actually servicing patients); *Paper Mill Playhouse v. Millburn Twp.*, 7 *N.J.Tax* 78, 84 (Tax 1984) (holding that a previously tax exempt property that discontinues actual use during a discrete reconstruction period retains its exempt status).

The Pennsylvania precedent, however, provides a bright-line standard that entitles the taxpayer to exemption if its use of the property is consistent with the tax-exempt purposes embodied in its legislation. We conclude that such a bright-line standard is consistent with New Jersey's statutory and constitutional mandates.

## IV.

Ultimately, we are convinced that the Statute does not require the property be a lawful use under the municipality's zoning ordinance in order to qualify for tax exemption. As we noted early on, the Statute clearly and unambiguously contains no such requirement.

Recently, in *Presbyterian Home at Pennington, Inc. v. Borough of Pennington*, 409 *N.J.Super.* 166, 170, 976 *A.2d* 413 (App.Div. 2009), *certif. denied*, 201 *N.J.* 143, 988 *A.2d* 563 (2010), we reviewed an order of the Tax Court that "held ... an assisted living facility must [provide charity care] before qualifying for ... exemption" under the Statute. We took note of a recent amendment to the Statute that added " 'assisted living facilities' " to the definition of " 'hospital purposes.' " *Id.* at 179, 976 *A.2d* 413 (quoting *N.J.S.A.* 54:4–3.6). We additionally noted that despite the clear and unambiguous provisions of the Statute, the trial judge concluded that the plaintiff did not qualify because the facility was " 'not operated for the charitable and hospital purposes envisioned by its organizational documents, or for the "hospital purposes" contemplated by *N.J.S.A.* 54:4–3.6.' " *Id.* at 179–80, 976 *A.2d* 413 (quoting *Presbyterian Home at Pennington, Inc. v. Pennington Borough*, 23 *N.J. Tax* 473, 512 (Tax 2007)). In reversing, we held:

A court ought not rewrite a plainly-written enactment of the Legislature. Nor should it presume the Legislature intended something other than the meaning of the plain language. Most especially, it is not the function of a court to insert an additional qualification which the Legislature pointedly omitted in drafting its own enactment.

Yet, that is what the Tax Court judge did here. There was no basis in either the plain language of the statute or its legislative history to impose an additional charitable care component upon an assisted living facility for it to qualify for tax exemption under the hospital purposes provision of *N.J.S.A.* 54:4–3.6.

[*Id.* at 185, 976 *A.*2d 413 (citations and quotations omitted).]

So too, in this case, the trial judge engrafted upon the unambiguous language of the Statute the requirement that plaintiff's property comply with Summit's zoning ordinance. Such an "additional qualification" requirement finds no support in the language of the Statute, nor does it serve its underlying purposes. We therefore reverse.

Reversed.