**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3547-17T2

CHRISTIAN MISSION
JOHN 316,

    Plaintiff-Appellant,

v.

PASSAIC CITY,

    Defendant-Respondent.

_____

        Argued March 12, 2019 – Decided August 30, 2019

        Before Judges Hoffman, Suter and Geiger.

        On appeal from the Tax Court of New Jersey, Docket No. 013203-2013, whose opinion is reported at 30 N.J. Tax 357 (Tax 2018).

        Tova L. Lutz argued the cause for appellant (Lutz Law Group, LLC, attorneys; Tova L. Lutz, of counsel and on the briefs; Jeffrey Zajac, on the briefs).

        Kenneth A. Porro argued the cause for respondent (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; Kenneth A. Porro, of counsel and on the brief; Edna J. Jordan, on the brief).

Christopher John Stracco argued the cause for amicus curiae Gill St. Bernards School, Inc. (Day Pitney LLP, attorneys; Christopher John Stracco and Jennifer Gorga Capone, on the brief).

PER CURIAM

Plaintiff Christian Mission John 316 (Christian Mission) appeals the February 28, 2018 order of the Tax Court that denied its motion for summary judgment and granted the cross-motion by defendant City of Passaic, the result of which was to dismiss Christian Mission's complaint for tax exemption for the 2013 tax year. We affirm the Tax Court's order.

Christian Mission is a church in the City of Passaic. Its parking lot and church building are on lots twelve and thirteen of a specific block. In 2009, it purchased lot eleven in the same block. That lot contained a warehouse that previously was used by a commercial business. Between 2009 and 2011, Christian Mission used the warehouse "as an extension of its regular religious activities," although these "primarily" were conducted at the existing church. Reverend Francisco Joissim certified that from 2009 to 2011, the warehouse "remained in its original form, essentially that of a large open space." Activities there included "ceremonial activities, religious services during mild weather months, youth rallies, women's rallies, fundraising activities, fairs and storage of various items associated with church functions. At all times the basement

2                                                              A-3547-17T2

was used for storage of church items." At some point between 2009 and 2011, Christian Mission applied for a tax exemption for lot eleven, having obtained exemption for lots twelve and thirteen in prior years. Its application was denied and it did not appeal.

In late 2011, Christian Mission wanted to renovate the warehouse on lot eleven to transition it "to a formal church." It applied for, and was granted, a number of construction-related permits. A tax assessor for defendant certified that as part of the reconstruction, "[t]he walls and interior [of the building were] stripped down to the frame, the windows [were] covered with plastic," and by July 2012, the "building was essentially a shell or frame . . . ."

The reverend certified that "significant renovations" were made to the warehouse beginning in January 2012, and "conclude[ed] around September 2012." He also certified that "[c]ommunity religious services began sometime around September [2012] with formal services commenc[ing] around the time of Thanksgiving 2012 . . . ." The reverend noted the warehouse was used between January and September 2012 for religious services at the construction site.

> These services were comprised of approximately [ten] people, including church members who were part of the construction crew, and often other members and/or spouses joining. These services lasted approximately

3                                                          A-3547-17T2

[twenty] minutes . . . and concluded with [the reverend] blessing the workers as they were about to begin their work day ahead.

Sometimes participants would bring food. At other times, the reverend counseled congregants at the site.

City inspections of the property were conducted on several dates both before and after Thanksgiving 2012, and continued through July 2013. These included inspections of the building, fire alarm and electrical and mechanical systems. Christian Mission was issued a temporary certificate of occupancy on April 15, 2013. The final certificate of occupancy was issued on July 23, 2013.

Christian Mission's application for a 2013 tax year exemption for the warehouse lot was denied by defendant on July 31, 2013.[1] Shortly after, it filed a complaint in the Tax Court in which it contested both the denial of the 2013 tax year exemption and the amount of taxes assessed.[2] In October 2017, Christian Mission filed a motion for summary judgment, and the next month, defendant filed a cross-motion for summary judgment on the exemption issue.

---

[1] The next year, Christian Mission was granted a tax exemption for the 2014 tax year.

[2] Plaintiff subsequently withdrew its claim about the amount of taxes assessed.

In February 2018, the Tax Court denied Christian Mission's motion for summary judgment and granted defendant's, the effect of which was to deny plaintiff's request in 2013 for a tax exemption for the warehouse lot. In its written decision, the Tax Court found that as of October 1, 2012, which was the assessing date, "plaintiff was making limited use of the partially renovated structure . . . by conducting daily [twenty] minute morning prayer services." Christian Mission John 316 v. Passaic City, 30 N.J. Tax 357, 372 (Tax 2018). However, these were "limited to church members, who were part of the construction team offering inspirational blessings as they began their workday to renovate the subject property." Ibid. It found that these "were not available to the public," and concluded that this was not actual use as contemplated by N.J.S.A. 54:4-3.6. Ibid. It found that formal services began around Thanksgiving in 2012, after the assessing date. City inspections of the building continued thereafter. A temporary certificate of occupancy was not issued until April 2013. Because of this, the Tax Court found "plaintiff was not in a position to provide its services and/or benefits to the public, as of the October 1, 2012 assessment date." Id. at 373. In fact,

> as of the assessing date, the only recipients of plaintiff's religious services on the subject property were the parishioners and their spouses, who were part of the construction team, dedicated to renovating the

structure.  Neither the public, nor the vast majority of plaintiff's congregation[,] derived any benefit from the partially completed structure as of the October 1, 2012 assessing date.

[Ibid.]

The Tax Court rejected the argument that the failure to have a certificate of occupancy was not dispositive of "actual use" within the statute.  Id. at 374-76.  Citing N.J.S.A. 52:27D-133, the Tax Court concluded the State Uniform Construction Code Act, N.J.S.A. 52:27D-119 to -141, "prohibit[ed] the use or occupancy of a structure until a certificate of occupancy has issued."  Id. at 377. For properties not previously afforded a tax exemption, the court concluded that N.J.S.A. 54:4-3.6 implied "that the use cannot be achieved at the expense of the safety, welfare and well-being of the public."  Id. at 377.  Because this property did not have a temporary certificate of occupancy until April 2013, under the statute, the property "cannot be viewed as actually in use."  Id. at 378.  The Tax Court limited its holding to properties, such as this, "that: (1) have not been previously granted tax exemption; (2) are experiencing new construction or renovation to permit an intended use of the property for an exempt purpose; and (3) have not been the subject of an added assessment."  Ibid.  The Tax Court granted defendant's cross-motion for summary judgment because the warehouse lot "was not ready to be occupied and used by the public for a tax-exempt

purpose until sometime following the October 1, 2012 assessment date." Id. at 380.

On appeal, plaintiff argues that the Tax Court erred in finding plaintiff was not "actually using" the property for religious purposes prior to the October 1, 2012 assessment date. It contends the lack of a certificate of occupancy should not have been dispositive about its actual use of the property. It also argues that it was contrary to public policy and equitable considerations to deny it a tax exemption.

We review a court's grant of summary judgment de novo, applying the same standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017) (citing Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016)). Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp., 224 N.J. at 199 (quoting R. 4:46-2(c)). On this appeal, we review the facts most favorably to Christian Mission. See ibid.

"[A]ll real property is subject to local property taxation . . . unless its use has been exempted." Hunterdon Med. Ctr. v. Twp. of Readington, 195 N.J. 549, 553 (2007). N.J.S.A. 54:4-3.6 sets forth certain exemptions. Christian Mission filed for an exemption for its warehouse lot under this statute. In relevant part, it provides an exemption for "all buildings actually used in the work of associations and corporations organized exclusively for religious purposes, including religious worship, or charitable purposes." N.J.S.A. 54:4-3.6.

Our Supreme Court has recognized that this statute "requires three criteria for exemption, (1) [the owner of the property] must be organized exclusively for the [exempt purpose]; (2) its property must be actually and exclusively[3] used for the tax-exempt purpose; and (3) its operation and use of its property must not be conducted for profit." Hunterdon Med. Ctr., 195 N.J. at 561 (alteration in original) (footnote omitted) (quoting Paper Mill Playhouse v. Millburn Twp., 95 N.J. 503, 506 (1984)). These criteria have been applied to the religious purposes exemption. See Roman Catholic Archdiocese of Newark v. City of E. Orange, 18 N.J. Tax 649, 653 (App. Div. 2000).

---

[3] The exclusive use requirement was deleted by Legislative amendment in 1985; now the property must be "actually" used for the tax-exempt purpose, rather than "actually and exclusively used." See Int'l Schs. Servs. Inc. v. West Windsor Twp., 207 N.J. 3, 21 (2011); Compare L. 1985, c. 395 § 1, with L. 1983, c. 224 § 1.

A-3547-17T2

In this case, defendant did not contest that Christian Mission satisfied the first and third criteria. Its request for an exemption was denied based on the "actual use" criterion.

"Tax-exemption statutes are strictly construed against those claiming exemption because of the compelling public policy that all property bear its fair share of the burden of taxation." N.J. Carpenters Apprentice Training & Educ. Fund v. Borough of Kenilworth, 147 N.J. 171, 177 (1996) (citing Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214 (1961)). "The 'legislative design' of [N.J.S.A. 54:4-3.6] . . . has been long-recognized as '[a] concession . . . due as quid pro quo for the performance of a service essentially public, and which the state thereby is relieved . . . from the necessity of performing.'" Society of the Holy Child Jesus v. City of Summit, 418 N.J. Super. 365, 373 (App. Div. 2011) (second alteration in original) (quoting Carteret Acad. v. State Bd. of Taxes & Assessment, 102 N.J.L. 525, 528 (Sup. Ct. 1926)). The Supreme Court noted "[t]he exemption is granted by the State because of the contribution of the exempt facility to the public good." Roman Catholic Diocese of Newark v. Ho-Ho-Kus Borough, 42 N.J. 556, 566 (1964). "[T]he Tax Court evaluates whether the property is 'reasonably necessary' for such tax-exempt purposes." Borough of Hamburg v. Tr. of Presbytery of Newton, 28 N.J. Tax 311, 318 (Tax

Ct. 2015) (quoting Roman Catholic Archdiocese of Newark v. East Orange City, 18 N.J. Tax 649 (Tax 2000)).

Christian Mission argues the Tax Court erred in denying its motion for summary judgment because it actually was using the warehouse as of October 1, 2012 by holding religious services there and by storing church items. We agree with the Tax Court that Christian Mission did not meet its burden of proving actual use based on the uncontested facts.

The uses of the warehouse from 2009 to 2011 prior to reconstruction in January 2012 are not determinative of the issue raised. Although Christian Mission applied for an exemption prior to 2011, that exemption application was denied and then not appealed. In addition, properties are assessed "on October 1 in each year," thus, it is the use of the property on October 1, 2012 that determines whether the property can be exempt from taxes. See Atlantic Cty. New School, Inc. v. City of Pleasantville, 2 N.J. Tax 192, 195-96 (Tax 1981); see also N.J.S.A. 54:4-23. Christian Mission acknowledges that the building underwent extensive renovation beginning in January 2012. It did not dispute that by July 2012, "the building was essentially a shell or frame . . . ." Taking the facts alleged by Christian Mission, the reverend certified that the building was used to store church items from 2009 to 2011; there actually was no

evidence that items were stored after the extensive renovations started in January 2012 or that it was used for storage as of October 1, 2012. Storage prior to reconstruction was not actual use on the assessment date. "[E]ach annual assessment [is] a separate entity distinct from the assessments for other years." City of E. Orange v. Church of Our Lady of Most Blessed Sacrament, 25 N.J. Misc. 58, 61 (Div. Tax App. 1946).

Christian Mission acknowledged that formal church services commenced around Thanksgiving 2012, which was after the assessment date of October 1, 2012. Just before that acknowledgement in his certification, the reverend states that "community religious services began some time around September" of the same year. The certification's description—about the services that occurred before the "formal services" started in Thanksgiving—stated that there were prayer services for the construction workers, who were members of the congregation, and that sometimes their spouses joined them. Christian Mission has not claimed the services were open to the public or even to other congregants of the church who may have been present. There was no allegation the church's regular services were being held at the warehouse until Thanksgiving 2012.

That the building did not have even a temporary certificate of occupancy is some evidence that the building was not open to the general public. In Grace

A-3547-17T2

& Peace Fellowship Church, Inc. v. Cranford Twp., 4 N.J. Tax 391, 401 (Tax 1982), the Tax Court would not grant an exemption for a church building that was incomplete and had no temporary certificate of occupancy although it was used for occasional meetings of prayer groups while the construction was in progress. The church volunteers worked at the site and held prayer services. Id. at 394-95. Citing a series of case precedents that denied tax exemptions for buildings under construction, the Tax Court reasoned that the public benefit underlying tax exemption had not yet begun, and that denying the tax exemption was both consistent with the language of the statute and was an appropriate incentive for the exempt organization to complete the construction. Id. at 397-401; see Inst. of Holy Angels v. Borough of Fort Lee, 80 N.J.L. 545 (Sup. Ct. 1910) (church building under construction not exempt from property tax); see also Holy Cross Precious Zion Glorious Church of God v. Trenton City, 2 N.J. Tax 352, 357-58 (1981) (holding the intent to make use of building under renovation for religious purposes did not constitute actual use as required by exemption statute). The plaintiff in Grace and Peace, "was not in a position to provide its services and/or benefits to the public in general." 4 N.J. Tax at 401. The building in that case was "not available nor was it used for the public benefit" until after the tax assessment date. Ibid. The Tax Court noted that it

was unlikely "the Legislature had intended to encourage the use of incomplete structures so that taxpayers could avoid taxation during the construction period." Ibid.

Similarly here, there was no evidence the warehouse was available for public use or was being used for the public benefit as of October 1, 2012. This is particularly the case because there was no certificate of occupancy, which implied that the building was not actually in use for religious activities at the relevant time.

This case is distinguishable from Society of the Holy Child Jesus, 418 N.J. Super. at 365. In that case, the City of Summit revoked the plaintiff's long-standing tax exemption because a property that previously was used as a residence for nuns was converted to use for school purposes, which was contrary to a zoning ordinance without a conditional use variance. Id. at 368-71. In reversing the Tax Court, we were "convinced that [N.J.S.A. 54:4-3.6 did] not require the property to be a lawful use under the municipality's zoning ordinance in order to qualify for tax exemption." Id. at 386. We said that "the [s]tatute clearly and unambiguously contains no such requirement." Ibid. One of our concerns was that the statute could be subject to inconsistent applications if the

A-3547-17T2

Tax Court were required "to evaluate the nature of the zoning violation before deciding whether the property is exempt . . . ." Id. at 378.

It is not a case involving the revocation of a long-standing exemption based on a change in use. Christian Mission's warehouse had no tax exemption because the prior owner previously used it for commercial purposes. More importantly, this case does not involve any evaluation of the nature of a zoning violation because there simply was no certificate of occupancy, temporary or permanent. The Tax Court was not called upon to interpret the zoning laws, as it was acknowledged that there simply was no certificate. We see no reason why the Tax Court could not consider this as evidence in evaluating whether the property was in actual use by the public in considering an exemption under N.J.S.A. 54:4-3.6.

The Tax Court's order was not contrary to public policy or equitable considerations. It was Christian Mission that had the burden of proving it was entitled to the tax exemption. Although it claims the date for issuing a certificate of occupancy could be subject to manipulation, we have no need to address this because there was no allegation of delay in this case, and the tax exemption was granted the next tax year. Therefore, we agree with the Tax Court that use of

A-3547-17T2

the property on October 1, 2012 did not constitute actual use as required by N.J.S.A. 54:4-3.6 for a tax exemption in 2013.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3547-17T2