PER CURIAM.
Plaintiff, City of Long Branch, appeals from a judgment of the Tax Court entered on January 24, 2003, determining that the subject property qualified for tax exemption for the tax year 2001, pursuant to N.J.S.A. 54:4r-3.6. On appeal, the City raises the following points:
Point I — The use exemption under N.J.S.A. 54:4-3.6 does not apply to part time use of a premises for religious purposes.
Point 77 — The Tax Court erred in holding that a residential property not actually utilized for religious purposes on a full time basis may be tax exempt.
Point 777 — The Tax Court’s holding improperly circumvents the requirements and limitations of the parsonage exemption under N.J.S.A. 54:4-3.6.
The subject property is owned by defendant Ohel Yaacob Congregation, an Orthodox Jewish congregation located in Deal, Monmouth County. The property contains a two-story residential structure situate adjacent to the Congregation’s synagogue. The year-round membership in the Congregation consists of sixty to eighty families, but swells to 400-500 families in the summer months.
The property is used from May through early October to house visiting rabbis and cantors who perform additional religious services to accommodate the increase in congregation membership during the summer season. The trial court found, with ample factual support, that “[a]ppearances by those rabbis have the effect of attracting additional summer attendance and financial support for the Congregation. Cantor Ben Haim testified that the summer membership provides eighty percent of the monies needed to support the Congregation for the entire year.” The Cantor also testified that proximity of the subject property to the synagogue was significant because, as Orthodox Jews, clergy are not permitted to utilize motor vehicles on the Sabbath to drive to services. Further, books and other religious personalty are stored year-round in the garage of the property.
In its written opinion rendered on January 21, 2003, the Tax Court preliminary rejected the Congregation’s contention that the so-called “parsonage” exemption under N.J.S.A. 54:4-3.6 applied. Simply stated, the court held that the exemption was inapplicable *271 because the subject property was not “actually occupied as a parsonage” by the “officiating” clergymen of the congregation, since the visiting clergymen were not performing functions in a position of authority. See Friends of Ahi Ezer Congregation, Inc. v. Long Branch, 16 N.J.Tax 591, 595 (Tax 1997).
However, the Tax Court determined that the broader exemption under § 3.6 applied. That section reads:
The following property shall be exempt from taxation under this chapter: ... all buildings actually used in the work of associations and corporations organized exclusively for religious purposes, including religious worship, or charitable purposes, provided that if any portion of a building used for that purpose is leased to a profit-making organization or is otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion shall be exempt from taxation, and provided further that if any portion of a building is used for a different exempt use by an exempt entity, that portion shall also be exempt from taxation____[1]
[N.J.S.A. 54:4-3.6]
Applying the statutory language as construed by pertinent case law, the Tax Court found that to be exempt the property need not be used as a “parsonage” and indeed need not be used exclusively for religious purposes. See City of Long Branch v. Monmouth Med. Ctr., 138 N.J.Super. 524, 351 A.2d 756 (App.Div.1976), aff'd o.b., 73 N.J. 179, 373 A.2d 651 (1977). The court reasoned that, rather than a strict application of the exclusive religious purpose test, the court must focus on whether the property is predominately used as an integral part of the operation of the religious organization, and provision of the residence is reasonably necessary for its proper and efficient operation. See St. Ann’s Catholic Church v. Hampton Borough, 14 N.J.Tax 88, 99-100 (Tax 1994) (and cases cited therein).[2]
The Tax Court, applying the pertinent test, found that:
*272 I find that the Congregation has demonstrated that the subject property is reasonably necessary for its operation. A Congregation with a membership of 60 to 80 families which expands to 400 or 500 families in the summer can reasonably be expected to require additional clergy to handle the increased demands of the larger membership. While it is not inconceivable that the year round clergy could handle the burden of the additional Sabbath services, I find credible Cantor Ben Haim’s testimony to the effect that the day to day needs of the larger membership for teaching, officiating and counseling services could not be handled by the year round clergy. Because of religious restrictions as to how and when the clergy may travel on the Sabbath and on religious holidays, it is necessary for the Congregation to supply housing in close proximity to the synagogue in order to obtain the services of the visiting clergy. In other words, the subject building used for the housing of the visiting clergy is necessary for the proper and efficient operation of the Congregation during the summer months, and is not a mere convenience for the visiting clergy or for the Congregation. Further, the visiting clergy make it possible to serve the enlarged membership during the summer months and it is that membership which provides much of the financial support for the year round operation of the Congregation.
We affirm substantially for the reasons expressed by the Tax Court in its comprehensive written opinion. Its findings are supported by substantial, credible evidence in the record, Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974), and its conclusions based on those findings are legally sound. Implicit in its holding is the court’s rejection of the City’s claim, advanced before us, that the exemption does not apply to “part-time” residents of a dwelling by visiting clergy. Obviously, application of the exemption in cases where there is not year-round occupancy of the subject property will depend on the facts of each case. Here, membership and activity in the Congregation triples during the four summer months. Notably, the summer membership donates the lion’s share of the financial support to the Congregation. Consequently, occupancy by the visiting clergy for this substantial part of the year is reasonably necessary, if not essential, for the work of the Congregation. Absent language in the statute setting forth qualifying minimum time periods for such a use, on the facts before us, we agree that the summer months’ occupancy qualifies the residence for the exemption.
Affirmed.

 As the Tax Court observed, N.J.S.A. 54:4-3.6 was amended by L.2001, c.18, § 1, which deleted the language “and exclusively” used from the statute. The amendment was made retroactive to September 30, 1999, but, as the court noted, applicability of the amendment to this case was not raised by either party.

 The Tax Court further held that “although a residential property not amounting to a parsonage may be exempt as used for religious purposes, a residence *272 principally used as a parsonage is not eligible for the same exemption and is limited to the express provisions for parsonages.”