PIZZUTO, J.T.C.
This case presents the issue of whether a Jewish congregation may claim a parsonage exception under N.J.S.A. 54:4-3.6 for a residence occupied by a retired rabbi who continues to be active in the congregation as “rabbi emeritus.” The statute allows an exception for certain buildings “actually occupied as a parsonage by the officiating clergymen of any religious corporation of this State.” N.J.S.A. 54:4-3.6. The issue is whether, on the facts of this case, the rabbi emeritus meets the legal definition of an officiating clergyman for purposes of the statute. The parties filed cross motions for summary judgment. Since there are no genuine issues of material fact, summary judgment as a matter of law pursuant to R. 4:46-2 is appropriate.
The plaintiff is a religious corporation of the State of New Jersey whose synagogue is located within the City of Englewood, *465 and which owns two residential properties within Englewood. One of these properties, used as a parsonage for the synagogue’s principal rabbi, is without dispute covered by the parsonage exemption. The other, located at 83 Glenwood Road (Block 1006, Lot 16), is a residence for the synagogue’s rabbi emeritus and his wife, and is the subject of this case. The congregation brought this action to contest a determination by the Bergen County Board of Taxation denying exemption from taxation of the residence of the rabbi emeritus as a parsonage for tax year 1999.
The parties have stipulated that the congregation maintains the subject property exclusively as a residence for the congregation’s retired rabbi, Arthur Hertzberg, and his wife. Rabbi Hertzberg’s uncontroverted deposition establishes that he served as the synagogue’s full-time rabbi between 1956 and 1985, when he became rabbi emeritus. In the deposition he described a variety of sendees he has continued to perform for the congregation, including maintaining an office within the synagogue at which he has been available for counseling congregants a minimum of thirty hours per week. The deposition indicates that congregants have sought his counseling services on a daily basis. Rabbi Hertzberg has also performed weddings and officiated at funerals, and participated in mourning (shiva) observances. He does not officiate in the synagogue during the sabbath or on high holy days; instead, that is a duty of the incumbent rabbi.
In 1959, the congregation granted Rabbi Hertzberg life tenure as the congregation’s rabbi. Shortly before his retirement in 1985, the congregation entered into a written retirement agreement with Rabbi Hertzberg. The agreement provides in part that the rabbi emeritus may remain in the home he has occupied as a parsonage since his arrival in 1956. It does not require the performance of any duties on the part of the rabbi emeritus. Rabbi Hertzberg currently receives no salary from the congregation and has moved his personal pension out of the synagogue’s group plan.
The parties do not dispute the extent of Rabbi Hertzberg’s continued participation in the congregational affairs. They dis *466 agree, however, on whether his role as rabbi emeritus is of a character that permits the residence set aside by the synagogue for his use to qualify for the parsonage exemption.
The parsonage exemption covers, in part, “the buildings, not exceeding two, actually occupied as a parsonage by the officiating clergymen of any religious corporation of this State, together with the accessory buildings located on the same premises.” N.J.S.A. 54:4-3.6. The statute also provides, subject to certain limitations, an exemption for the associated land. The exemption may extend to two dwellings for a single congregation, occupied by persons exercising different responsibilities within the congregation. Congregation Ahavath Torah v. Englewood, 21 N.J.Tax 318 (Tax 2004) (rabbi and cantor).
In determining whether the parsonage exemption applies, the eases examine the extent of the clergyman’s activities within the religious organization, looking not to one particular factor but rather the entirety of the individual’s relationship to the congregation. Friends of Ahi Ezer Congregation, Inc. v. Long Branch City, 16 N.J.Tax 591 (Tax 1997). In St. Matthew’s Lutheran Church for the Deaf v. Division of Tax Appeals, 18 N.J.Super. 552, 87 A.2d 732 (App.Div.1952), where an exemption was allowed, the court noted that the clergy member, an ordained minister of the Lutheran Church, was assigned “indefinitely” to conduct religious worship and that he had an “established congregation. . .which [met] regularly and at a fixed place.” Id. at 558, 87 A.2d 732. Later cases have followed the practice of examining the role of the clergyman within the congregation to determine whether the parsonage exemption should apply. “If the duties sound like those performed by congregational leaders of all religious denominations, the clergyman is considered an officiating clergyman of the religious corporation.” City of Long Branch v. Ohel Yaacob Congregation, 20 N.J.Tax 511, 517 (Tax), aff'd, 21 N.J.Tax 268 (App.Div.2003), quoting Friends of Ahi Ezer Congregation, supra at 595.
In Ahi Ezer, the Tax Court found that an assistant rabbi did not qualify as an officiating clergyman under the statute because he *467 did not “render the services ordinarily ‘performed by congregational leaders of all religious denominations.’” Ahi Ezer 16 N.J.Tax at 597, quoting Goodwill Home & Missions, Inc. v. Garwood, 281 N.J.Super. 596, 603, 658 A.2d 1330 (App.Div.), appeal dismissed, 143 N.J. 317, 670 A.2d 1059 (1995). In Ahi Ezer, there was a principal rabbi, Rabbi Choueka, and an assistant rabbi, Rabbi Maslaton, for whose dwelling an exemption was sought. The assistant rabbi primarily performed “Bible recitations at religious services” (a function also performed by lay congregants on a volunteer basis) and prepared twenty-five to thirty candidates for their Bar Mitzvahs each year. Id. at 597. He also made visits to an area nursing home, where he performed religious services once a week and insured operation of a kosher kitchen.
In concluding that Rabbi Maslaton was not an officiating clergyman, the court observed:
The record contains no evidence that Rabbi Maslaton has direct responsibility for taxpayer’s religious services: he does not preside over the service, present the sermon, or have any obligation to assure that the service is properly run. Moreover, there was no testimony that Rabbi Maslaton has a position of authority or decision-making role in the synagogue or that his duties include counseling congregants or officiating at weddings and funerals. The bulk of religious services at Ohel Simha synagogue are performed by, and are the responsibility of, Rabbi Choueka, who is clearly the spiritual leader and pulpit rabbi of the congregation. Therefore, Rabbi Maslaton is not an officiating clergyman of plaintiff at the Ohel Simha synagogue.
[Ahi Ezer, supra, at 597-98.]
This analysis should not be understood to restrict the applicability of the term “officiating clergyman” to the individual having ultimate supervision of the affairs of the congregation or responsibility to conduct regularly scheduled worship services. A restriction of this kind would not comport with the legislative allowance of separate parsonage exemptions for two individuals with different roles in the same congregation. Where the activities are those performed by members of the clergy and where the individual is engaged in a continuing and regular pattern of activities, as opposed to one that is sporadic or occasional, the individual may be considered an officiating clergyman, even where the role does not include ultimate supervision of congregational affairs or the *468 conduct of regularly scheduled services. In any given case, the question is fact-sensitive and the test is the character and extent of the activities actually performed.
In the present case, Rabbi Hertzberg certainly continues to exercise the responsibilities for which he has been educated and to which he has dedicated his life. In particular, he offers counseling services to congregants every day. He conducts wedding and funeral services on a regular basis. He sits shiva with mourners and remains intimately bound into the daily life of the congregation. Rabbi Hertzberg is a “spiritual leader” within the congregation of Temple Emanu-El. The test for whether an individual is within the scope of the parsonage exemption lies in an evaluation of the intensity of involvement with the congregation, and Rabbi Hertzberg satisfies this test.
This ease, however, presents the circumstance that Rabbi Hertzberg’s occupancy of the property claimed to be exempt is not conditioned on his current performance of activities as an officiating clergy member. His right to occupy the residence derives from the retirement agreement and recognizes the value of past services, while the activities Rabbi Hertzberg now performs are essentially voluntary on his part.
The statutory language allowing an exemption for property “actually occupied by the officiating clergymen” would not seem to permit exemption for a dwelling occupied by a completely retired member of the clergy. Where, however, as here, the “retired” individual continues to share in the officiating functions, exemption need not require that the occupancy be conditioned on the performance of those functions.
The statute embodies a legislative purpose that housing provided for officiating clergy is eligible for tax exemption. Presumably the objectives are to relieve congregations of a portion of the economic burden of supporting their clergy and to facilitate the convenient location of parsonages. When the right of occupancy is independent of service, as (for example) under a retirement agreement, the exemption still serves the statutory objectives as long as the clergy member continues to function in a role *469 that falls within the statutory concept of officiating clergy. Should the retired clergy member cease to perform activities of the requisite character and extent, the exemption would terminate, even though the occupancy would continue. While service and occupancy co-exist, however, the statutory requirements are satisfied and the exemption should be allowed.
In the present circumstances, it is therefore immaterial that Rabbi Hertzberg’s occupancy is independent of the service he performs for the congregation. The continued service of its rabbi emeritus in a role that satisfies the definition of officiating clergy and its acceptance by the congregation are sufficient to support the exemption.
For the reasons stated, judgment shall be entered in favor of plaintiff Temple Emanu-El allowing the congregation to claim a parsonage exemption under N.J.S.A. 54:4-3.6 for the residence used by Rabbi Hertzberg.