## TAX COURT OF NEW JERSEY



**JOSHUA D. NOVIN**
**Judge**

Dr. Martin Luther King, Jr. Justice Building
495 Dr. Martin Luther King, Jr. Blvd., 4th Floor
Newark, New Jersey 07102
Tel: (609) 815-2922, Ext. 54680

**NOT FOR PUBLICATION WITHOUT THE APPROVAL**
**OF THE TAX COURT COMMITTEE ON OPINIONS**

June 11, 2025

Arthur C. Hopkins, Jr., Esq.
1135 Broad Street, Suite 105
Clifton, New Jersey 07013

Christos J. Diktas, Esq.
Christine Gillen, Esq.
Diktas Gillen, P.C.
596 Anderson Avenue, Suite 301
Cliffside Park, New Jersey 07010

   Re: <u>Congregacion Mita, Inc. v. Cliffside Park Borough</u>
      Docket Nos. 009466-2022 and 009640-2024

Dear Mr. Hopkins, Mr. Diktas, and Ms. Gillen:

This letter constitutes the court's opinion on Congregacion Mita, Inc.'s ("Congregacion" or "plaintiff"), motions for summary judgment in the above matters. Congregacion asserts that its residential property in Cliffside Park Borough ("defendant"), is being used to further its work as a corporation organized exclusively for religious purposes, under N.J.S.A. 54:4-3.6. Thus, it argues that the property should be exempt from local property tax for the 2022 and 2024 tax years.

For the reasons stated below, the court finds that no genuine issues of material fact exist and that Congregacion's property is entitled to an exemption from local property tax for the 2022 and 2024 tax years.

## I.  <u>Procedural History and Findings of Fact</u>

Pursuant to <u>R.</u> 1:7-4, the court makes the following factual findings and conclusions of law based on its review of the pleadings, discovery materials, undisputed statements of fact, affidavits, and exhibits submitted by the parties.






Congregacion was organized on March 9, 1984, as a nonprofit corporation under the New Jersey Nonprofit Corporation Act, N.J.S.A. 15A:1-1 to 14-26. Effective May 1987, plaintiff was granted Internal Revenue Code section 501(c)(3) tax exempt status by the Internal Revenue Service. Plaintiff is a church chapter of the larger Christian church named Congregacion Mita – Puerto Rico, established in Puerto Rico in or about 1957 ("Mita"). Mita operates in the United States and internationally through its constituent church chapters.

Congregacion's Certificate of Incorporation recites that it was formed for the purpose of transacting, promoting, and carrying out the following goals:

> Religious preaching, the teaching of Christian morals, the fostering and development of charity works, the education of missionaries and the formation of missions, the building and dedication of temples to worship God, the constriction, organization and administration of schools, orphan's homes and hospitals and the carrying out of all such operations as may be necessary to these ends in the State of New Jersey or any other state or foreign county.

Similarly, Congregacion's "Bylaws as amended"[1] state that its objectives and purposes are:

> the religious preaching based on the fundamental principles of Christianity, teaching of Christian morality, stimulus and development of charity work, education and formation of missionaries, acquisition and edification of temples for the worship of God, construction, organization and administration of schools, retirements homes and hospital, when economic resources permit, the moral formation of its members to improve their quality of life.

In New Jersey, Congregacion operates a church in Pennsauken.[2] In addition, Mita has other regional church chapters in Hastings-on-Hudson, New York, Bristol, Connecticut, and Boston, Massachusetts.

---

[1] The "Bylaws as amended" submitted to the court were unsigned but bear a 2015 date.
[2] Congregacion's full-time pastor/minister at the Pennsauken chapter is Pastor Gloria Mestre.





On or about May 12, 2010, Congregacion purchased the real property and improvements commonly known as 698 Palisade Avenue, Cliffside Park Borough, Bergen County, New Jersey, for reported consideration of $1,300,000 (the "subject property").[3] The subject property is identified on defendant's municipal tax map as block 3102, lot 33.

The court's review of the motion record, opposition, deposition transcripts, affidavits, answers to interrogatories, and exhibits reveal that the subject property is a residential side-by-side duplex structure. Each duplex unit comprises three floors, containing several bedrooms, bathrooms, kitchens, dining areas, and living areas. A doorway on the second floor of the subject property provides a means of internal egress and access between the two duplex units.

To realize its religious goals and objectives, and to fulfill "their Christian ministry and mission load responsibility," Mita and Congregacion's spiritual leader is charged with leading faith missions. The subject property is principally used as a center of church operations and as a residence for the spiritual leader and the church's pastors, ministers, missionaries, and evangelists, during these missions to New Jersey. In general, the spiritual leader conducts not less than two missionary trips to New Jersey annually and resides in the subject property with the other missionaries, on average, between two to four months each mission.

During these missions, Congregacion's spiritual leader conducts religious services in the subject property that are broadcast over the Zoom and YouTube platforms, and meets with different church congregational groups, ministers, pastors, and missionaries from various Mita church chapters in the United States to promote spiritual growth and spread its Christian messages of love, peace, and freedom.

---

[3] The deed was recorded on May 20, 2010 in the Bergen County Clerk's Office in Deed Book 00435, Page 0213-0218.





In addition to the foregoing, the subject property serves a meeting place for Congregacion's Board of Directors[4]; as the permanent residence of one of Congregacion's pastors; as a temporary residence for Mita's administrative auditor, when she conducts audits of Congregacion and Mita's church chapters in the northeast United States; and as a temporary residence for Mita's supervising pastor, when she supervises Congregacion's pastors and conducts church business in New Jersey and in the northeast United States.

The subject property's eastern duplex unit's third floor bedrooms are exclusively reserved for use by the spiritual leader, Rosinin Rodriguez, and certain aides/assistants.[5] Pastor Gladys Acosta, a member of Mita's Board of Directors, administrator of Mita's Colegio Congregacion's[6] department of social work and orientation, and the spiritual leader's assistant, and Dora Lebron, M.D., the spiritual leader's physician and a church member, usually accompany the spiritual leader on her missionary trips to New Jersey and occupy the eastern duplex unit's third floor bedrooms.

The eastern duplex unit's second floor comprises a dining room and living area. In these areas, the spiritual leader conducts her virtually broadcast religious services and serves as the meeting place for the spiritual leader's meetings with different congregational groups, ministers, pastors, and missionaries. The second-floor area is also where Congregacion's Board of Directors hold their meetings.

The subject property's western duplex unit also contains several bedrooms, a kitchen, a dining room, and a living area. One of Congregacion's pastors, Pastor Peter Santana, permanently

---

[4] The spiritual leader is President of Congregacion's Board of Directors and is apparently President of the Board of Directors for each of Mita's church chapters.

[5] One of the bedrooms on the eastern unit's third floor is also assigned to Congregacion's former spiritual leader, Teofilo Vargas, who apparently died in January 2021.

[6] Mita's religious elementary education school in Puerto Rico.






resides in a bedroom on the first floor of the western duplex unit. In addition, the western duplex unit has two bedrooms specifically assigned to and utilized by Mita's internal administrative auditor, Ms. Rubiliany Sanchez, and Mita's supervising pastor, Pastor Migdalia Carrion, when they travel to New Jersey and the northeast United States to conduct church business.

The balance of the bedrooms in the eastern and western duplex units are used by the missionaries, pastors, church representatives, church youth groups, and Mita's band members, that accompany the spiritual leader on her missionary trips to New Jersey. In addition, certain bedrooms in the western duplex unit are sometimes occupied by "novices," or pastors in training, during their religious instruction. Most bedrooms in the eastern and western duplex units contain a placard bearing the name of the church representative who exclusively occupies that bedroom when they are in residence.

The court's review of the deposition transcripts reveal that Pastor Peter Santana serves as Congregacion's Treasurer and is a member of its Board of Directors. Pastor Santana was ordained in 2008, and his church responsibilities include visiting sick church members, consulting and aiding church members, offering spiritual and moral guidance to church members, presiding over funerals, and providing support, as needed, to the pastors at Congregacion's Pennsauken, Hastings-on-Hudson, and Bristol church chapters.

Pastor Carrion's deposition transcript reveals that she occupies a bedroom in the subject property's western duplex unit, "during certain periods . . . throughout the year." As supervising pastor, Pastor Carrion is directly responsible for the oversight of all Mita's ministerial labor or workforce worldwide. Thus, her responsibilities include regular travel to the various church chapters and meeting and supervising its pastors. Pastor Carrion travels to the Pennsauken chapter approximately two to three times per year. Pastor Carrion further testified that "novice" men and






women who are in training and learning to become pastors temporarily reside in bedrooms in the subject property's western duplex unit and accompany Congregacion's other pastors during their instruction and church work.

Ms. Sanchez's deposition transcript reveals that she has been the internal administrative auditor for Mita's church chapters in North America and South America since 2018. As internal auditor, Ms. Sanchez is responsible for reviewing and reconciling the financial statements and bank statements for all Mita church chapters in North America and South America. Ms. Sanchez stays in a bedroom in the subject property's western duplex unit, approximately two or three times a year (with an average length of stay of one to two weeks each), when she is conducting audits of Mita's church chapters in New Jersey or in the northeast United States.

On or about October 25, 2019, Congregacion filed an Initial Statement of Organization Claiming Property Tax Exemption ("Initial Statement") with defendant's municipal tax assessor for the subject property for the 2020 tax year. The Initial Statement claimed that the subject property was used as a "parsonage and [for] religious purposes." However, such application was denied and Congregacion took no appeal therefrom. Congregacion did not file Further Statements of Organization Claiming Property Tax Exemption for the 2022 or 2024 tax years with defendant's municipal tax assessor.

On July 28, 2022 and September 11, 2024, Congregacion filed complaints with the Tax Court challenging the subject property's 2022 and 2024 tax years assessments.[7]

---

[7] The 2022 tax year complaint alleges that the subject property "is used as a parsonage by 3 ordained pastors who minister at [p]etitioner's churches located in New Jersey, New York and Connecticut. It is also utilized as a temporary residence by the Spiritual Leader of [p]etitioner when she visits from [p]etitioner's denominational headquarters in Puerto Rico, to conduct Board of Directors meetings and virtual worship services." The 2024 tax year complaint asserts only that the "subject property is exempt from taxation pursuant to N.J.S.A. 54:4-3.6."





On April 24, 2025, Congregacion filed the instant motions for summary judgment, asserting that the subject property is exempt from local property tax as "buildings actually used in the work of associations and corporations organized exclusively for religious purposes, including religious worship," under N.J.S.A. 54:4-3.6.[8]

Plaintiff argues that "the [s]ubject [p]roperty is reasonably necessary for [p]laintiff's religious purposes."[9] Specifically, plaintiff asserts that "[s]ince 2010, Congregacion Mita has used the [s]ubject [p]roperty as its headquarters for the northeastern states, especially New Jersey, New York and Connecticut." Moreover, plaintiff emphasizes that:

> [t]o facilitate her responsibilities, [the] Spiritual Leader periodically travels from . . . San Juan, Puerto Rico to the [s]ubject [p]roperty in New Jersey. While she is in residence at the [s]ubject [p]roperty, the Spiritual Leader conducts meetings among the various ministries of Congregacion Mita from New Jersey, New York, Connecticut and elsewhere in North America, meets with ordained pastors, coordinates religious services and activities and convenes various meetings at the [s]ubject [p]roperty for each of the Board of Directors for New Jersey and New York. In addition[,] and while in residence at the [s]ubject [p]roperty, the Spiritual Leader conducts virtual religious services via Zoom or YouTube, to her parishioners in New Jersey, New York and around the world.

Moreover, when its spiritual leader conducts missions to New Jersey, "she often brings with her various pastors, ministers, evangelists, missionaries, deacons, and deaconesses to perform local ministry in New Jersey, New York and Connecticut." In sum, plaintiff maintains that the subject property is used as a base of operations and temporary residence for its spiritual leader,

---

[8] Congregacion does not maintain that the subject property qualifies as a parsonage under its motions for summary judgment.

[9] In its initial filings in support of the motions for summary judgment, Congregacion attached only the certification of its legal counsel. However, in its sur-reply, Congregacion attached the certification of Leonardo Sanchez-Estrada, its First Vice President. Mr. Sanchez-Estrada's certification states that "all factual assertions and documents contained in [Congregacion's counsel's certification] and [p]laintiff's Statement of Material Facts, are true and accurate."






and missionaries, during their New Jersey missions to meet with pastors, ministers, church officials, and congregants from Mita's church chapters, including but not limited to the Pennsauken, New Jersey, Hastings-on Hudson, New York, and Bristol, Connecticut chapters, and as a place for the spiritual leader to virtually conduct religious services which are then broadcast to its members over the Zoom and YouTube platforms.

Congregacion further emphasizes that the subject property is used by Mita's supervising pastor, Pastor Migdalia Carrion, and by Mita's internal administrative auditor, Ms. Rubiliany Sanchez, as their temporary residence when they conduct church business in New Jersey and the northeast United States.

Moreover, Congregacion maintains that "the [s]ubject [p]roperty is put to no other use besides the religious uses described above and is not used for any for-profit uses." Congregacion asserts that:

> [p]laintiff raises funds solely through its membership by such means as the sale of food to members after services, and at special activities such as family days, Mother's Day, Father's Day and other such events among the members. The income generated in this manner is used to pay the [p]laintiff's various operational expenses. No rent is paid by those who occupy the [s]ubject [p]roperty.

In sum, Congregacion argues that these matters are ripe for summary judgment because the subject property satisfies the criteria for local property tax exemption, under N.J.S.A. 54:4-3.6, and they have "presented a thorough-going statement as to the religious use of the [s]ubject [p]roperty as to why that use is reasonably necessary to pursue its . . . religious purposes and why the [s]ubject [p]roperty serves as an integral part of its organizational structure."

In response to the motions, defendant disputed substantially all of plaintiff's material statements of fact. Defendant's counsel emphasized that the affidavit annexed to Congregacion's






motions was signed by plaintiff's counsel, and because he lacks personal knowledge and is not competent to offer testimony regarding the truth or accuracy of any of the material facts being offered, the court should reject them.[10]

Defendant's counsel contends that Congregacion "has not proven that the subject property is predominantly used as an integral part of its religious organization or that use of this residential property is reasonably necessary for the proper and efficient operation of plaintiff's religious organization. . . ." Defendant maintains that plaintiff has not offered any evidence "demonstrating how the activities conducted at the subject property further the proper and efficient operation of its religious organization." In sum, defendant asserts that plaintiff has failed to prove that any of the activities conducted on the subject property are "integrated with plaintiff's exempt functions" and that "plaintiff's provision of the residence is reasonably necessary for the property and efficient operation of plaintiff's religious organization."

## II. Conclusions of Law

### A. Summary judgment

Summary judgment "'serve[s] two competing jurisprudential philosophies': first, 'the desire to afford every litigant who has a bona fide cause of action or defense the opportunity to fully expose his case,' and second, to guard 'against groundless claims and frivolous defenses,' thus saving the resources of the parties and the court." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 541-42 (1995)).

R. 4:46-2 outlines the circumstances under which summary judgment should be granted:

---

[10] During oral argument, defendant's counsel acknowledged that Mr. Sanchez-Estrada's certification, submitted in plaintiff's sur-reply, adequately supported Congregacion's material statements of fact.





> if the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.

> [R. 4:46-2.]

In Brill, our Supreme Court explained that "the essence of the inquiry [is] whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." 142 N.J. at 536 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). In conducting this inquiry, the trial court must engage in a "kind of weighing that involves a type of evaluation, analysis and sifting of evidential materials." Ibid. The standard established by our Supreme Court in Brill is as follows:

> [W]hen deciding a motion for summary judgment under R. 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential material presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party.

> [Id. at 536.]

In considering the material evidence before it with which to determine if there is a genuine issue of material fact, the court must view most favorably those items presented to it by the party opposing the motion and all doubts are to be resolved against the movant. Ruvolo v. American Casualty Co., 39 N.J. 490, 491 (1963). A court charged with "deciding a summary judgment motion does not draw inferences from the factual record as does the factfinder in a trial, . . . [i]nstead, the motion court draws all legitimate inferences from the facts in favor of the non-moving party." Globe Motor Co., 225 N.J. at 480 (internal citations omitted). Thus, the moving


Interpreter

ADA
Americans with Disabilities Act

ENSURING
AN OPEN DOOR TO
JUSTICE


party bears the burden "to exclude any reasonable doubt as to the existence of any genuine issue of material fact" with respect to the claims being asserted. <u>United Advertising Corp. v. Borough of Metuchen</u>, 35 N.J. 193, 196 (1961).

"By its plain language, <u>R.</u> 4:46-2 dictates that a court should deny a summary judgment motion only where a party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" <u>Brill</u>, 142 N.J. at 529. However, when the party opposing the motion merely presents "facts which are immaterial or of an insubstantial nature, a mere scintilla, fanciful, frivolous, gauzy or merely suspicious," then an otherwise meritorious application for summary judgment should not be defeated. <u>Judson v. Peoples Bank and Trust Co.</u>, 17 N.J. 67, 75 (1954). Hence, "when the evidence is so one-sided that one party must prevail as a matter of law . . . the trial court should not hesitate to grant summary judgment." <u>Brill</u>, 142 N.J. at 540 (quoting <u>Liberty Lobby, Inc.</u>, 477 U.S. at 252).

Having reviewed the pleadings, discovery, affidavits and undisputed statements of material fact, the court concludes that no genuine issues of material fact are in dispute. Rather, these matters involve an application of law to the undisputed facts contained in the motion record, and thus, are ripe for summary judgment.

       B.    <u>Local property tax exemption</u>

Unless expressly exempted by our Legislature, "[a]ll property real and personal . . . shall be subject to taxation annually. . . ." N.J.S.A. 54:4-1. Our State's Constitution expressly limits the Legislature's authority to grant an exemption from local property tax, providing in part, that "[e]xemption from taxation may be granted only by general laws." <u>N.J. Const.</u> art. VIII, § 1, ¶ 2. Thus, the grant of a local property tax exemption represents a significant departure from the principles of equality of treatment and the duty to share the tax burden. Moreover, when affording






statutory exemptions our Legislature "must base [them] on the property's use, not the owner's identity." Holmdel Twp. v. New Jersey Highway Auth., 190 N.J. 74, 87 (2007).[11]

Because exemption statutes represent a deviation from the principle that all property owners must equally shoulder their fair portion of the local property tax burden, our courts have demanded that exemption statutes be strictly construed. Princeton Univ. Press v. Princeton Borough, 35 N.J. 209, 214 (1961); Boys' Club of Clifton, Inc. v. Jefferson Twp., 72 N.J. 389, 398 (1977); New Jersey Carpenters Apprentice Training & Educ. Fund v. Borough of Kenilworth, 147 N.J. 171, 177-78 (1996). "[A]ll doubts are resolved against those seeking the benefit of a statutory exemption." Chester Borough v. World Challenge, Inc., 14 N.J. Tax 20, 27 (1994) (citing Teaneck v. Lutheran Bible Inst., 20 N.J. 86, 90 (1955)). Accordingly, the burden rests with the claimant to prove entitlement to local property tax exemption. Princeton Univ. Press, 35 N.J. at 21; New Jersey Carpenters Apprentice Training & Educ. Fund, 147 N.J. at 177-78.

Although the claimant shoulders a heavy burden when seeking an exemption, the rationale or "raison d'etre for [affording taxpayers] statutory exemptions from taxation is the benefit conferred upon the public by such religious, charitable or other similar institutions and the consequent relief, . . . of the burden imposed on the state to care for and advance the interest of its citizens." Grace & Peace Fellowship Church, Inc. v. Cranford Twp., 4 N.J. Tax 391, 399 (Tax 1982) (emphasis in original).

---

[11] The "tax status of property is fixed as of the assessing date." Atlantic Cty. New School, Inc. v. Pleasantville City, 2 N.J. Tax 192, 195-96 (1981); see also City of Jersey City v. Montville Twp., 84 N.J.L. 43, 44-45 (Sup. Ct. 1913), aff'd, 85 N.J.L. 372 (E. & A. 1913)). Thus, questions of local property tax exemption or valuation are determined as of October 1st of the pretax year. See N.J.S.A. 54:4-23; Catholic Relief Services, U.S.C.C. v. South Brunswick Twp., 9 N.J. Tax 25, 27 (Tax 1987), aff'd, 9 N.J. Tax 650 (App. Div. 1987). Here, the relevant assessing dates are October 1, 2021 and October 1, 2023.






In New Jersey, the grant of a local property tax exemption is viewed as a quid pro quo, for the taxpayer's performance of a public service. See Roman Catholic Diocese of Newark v. Borough of Ho-Ho-Kus, 42 N.J. 556, 566 (1964) ("The exemption is granted by the State because of the contribution of the exempt facility to the public good."); Society of Holy Child Jesus v. City of Summit, 418 N.J. Super. 365, 373 (App. Div. 2011) (the "'legislative design' of the [s]tatute has been long-recognized as a 'concession . . . [is] due as quid pro quo for the performance of a service essentially public, and which the State is hereby relieved . . . from the necessity of performing.'") (citation omitted); Carteret Acad. v. State Bd. of Taxes & Assessment, 102 N.J.L. 525, 528 (Sup. Ct. 1926) ("[T]he concession is due as quid pro quo for the performance of a service essentially public, and which the state thereby is relieved . . . from the necessity of performing."), aff'd, 104 N.J.L. 165 (E & A 1927); Grace & Peace Fellowship Church, Inc., 4 N.J. Tax at 399 ("The exemption is granted in recognition of the benefit which the public derives from the fulfillment of the exempt organization's activities and objectives.").

However, in applying these principles, the court should not distort the language of the statute or the legislative intent behind it. "The rule of strict construction must never be allowed to defeat the evident legislative design." Boys' Club of Clifton, Inc., 72 N.J. at 398. The construction of a statute, while strict, must be reasonable and consistent with the underlying legislative intent. International Sch. Servs., Inc. v. West Windsor Twp., 412 N.J. Super. 511, 524 (App. Div. 2010).

In enacting N.J.S.A. 54:4-3.6, our Legislature afforded the following uses of property an exemption from local property tax:

> all buildings actually used for colleges, schools, academies or seminaries, provided that if any portion of such buildings are leased to profit-making organizations or otherwise used for purposes which are not themselves exempt from taxation, said portion shall be subject to taxation and the remaining portion only shall be exempt;






> . . . all buildings actually used in the work of associations and corporations organized exclusively for the moral and mental improvement of men, women and children, provided that if any portion of a building used for that purpose is leased to profit-making organizations or is otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion only shall be exempt; all buildings actually used in the work of associations and corporations organized exclusively for religious purposes, including religious worship, or charitable purposes, provided that if any portion of a building used for that purpose is leased to a profitmaking organization or is otherwise used for purposes which are not themselves exempt from taxation, that portion shall be subject to taxation and the remaining portion shall be exempt from taxation, and provided further that if any portion of a building is used for a different exempt use by an exempt entity, that portion shall also be exempt from taxation; . . . all buildings owned or held by an association or corporation created for the purpose of holding the title to such buildings as are actually and exclusively used in the work of two or more associations or corporations organized exclusively for the moral and mental improvement of men, women and children; . . . the buildings, not exceeding two, actually occupied as a parsonage by the officiating clergymen of any religious corporation of this State, together with the accessory buildings located on the same premises.
>
> [Ibid.]

Here, Congregacion asserts that the subject property is a "building[] actually used in the work of associations and corporations organized exclusively for religious purposes, including religious worship, or charitable purposes . . ." under N.J.S.A. 54:4-3.6, and thus, is exempt from local property tax.[12]

When determining whether a property is entitled to an exemption from local property tax under N.J.S.A. 54:4-3.6, our courts have adopted a three-prong test: "'(1) [the owner of the property] must be organized exclusively for the [exempt purpose]; (2) its property must be actually

---

[12] Congregacion does not claim under its motions for summary judgment that the subject property is exempt from local property tax as a parsonage, under N.J.S.A. 54:4-3.6.






. . . used for the tax-exempt purpose; and (3) its operation and use of its property must not be conducted for profit.'" Hunterdon Medical Ctr. v. Twp. of Readington, 195 N.J. 549, 561 (2008) (quoting Paper Mill Playhouse v. Millburn Twp., 95 N.J. 503, 506 (1984)). This three-prong test, promulgated under Paper Mill Playhouse has been applied to religious organizations like plaintiff. See Roman Catholic Diocese of Newark v. City of E. Orange, 17 N.J. Tax 298, 304 (Tax 1998), aff'd, 18 N.J. Tax 649, 653 (App. Div. 2000); Society of the Holy Child Jesus, 418 N.J. Super. at 374; Christian Mission John 316 v. Passaic City, 30 N.J. Tax 357, 368 (Tax 2018), rev'd on other grounds, 243, N.J. 175 (2020).

Because the "finding as to exemption . . . [is] based upon an investigation of a number of factors," the court will evaluate each prong of the exemption test against the pleadings, discovery materials, exhibits, affidavits, and undisputed material facts to gauge whether Congregacion has satisfied the criteria. Pingry Corp. v. Hillside, 46 N.J. 457, 463 (1966).

### 1. Organizational test

Here, it is undisputed that Congregacion has owned the subject property since 2010. Moreover, Congregacion's Certificate of Incorporation, duly filed with the New Jersey Secretary of State on March 9, 1984, recites that its stated purpose is:

> to transact, promote and carry out . . . [r]eligious preaching, the teaching of Christian morals, the fostering and development of charity works, the education of missionaries and the formation of missions, the building and dedication of temples to worship God, the construction, organization and administration of schools, orphans, homes and hospitals . . . The corporation is organized exclusively for charitable, literary, scientific, religious and educational purposes. . . .

Notably, N.J.S.A. 54:4-3.6 contains no requirement that a corporation which is organized exclusively for religious purposes be dedicated entirely to matters of religious worship, prayer,






and liturgy. The statutory scheme does not impose any limitation or restriction on what activities comprise a religious purpose, but rather broadly expresses that a religious purpose includes religious worship and ancillary religious charitable purposes or functions. See N.J.S.A. 54:4-3.6; see also Roman Catholic Archdiocese of Newark v. City of E. Orange, 18 N.J. Tax at 655 (concluding that "[w]e perceive no need . . . to decide whether religious worship services which are conducted in a manner that is not reasonably calculated to attract attendance by members of the public would be sufficient to qualify the church properties for tax exemption under N.J.S.A. 54:4-3.6 even if those properties were not being used for other religious purposes."); Borough of Hamburg v. Trustees of Presbytery of Newton, 28 N.J. Tax 311, 323 (Tax 2015) (concluding that "[a]s for worship services, there is no requirement in N.J.S.A. 54:4-3.6 that worship services must be offered in order to qualify for exemption."); Mesivta Ohr Torah of Lakewood v. Lakewood Twp., 24 N.J. Tax 314, 330 (Tax 2008) (concluding that the "'guaranties [sic] of the Free Exercise Clause of the federal constitution and the religious freedom clauses of our State constitution restrict inquiry into what is an organized religion, who is a member of its clergy and what constitutes a 'congregation' of a religious body.' Courts must therefore proceed with caution when determining whether a congregation exists for purposes of N.J.S.A. 54:4-3.6." (internal citations omitted)).

In support of its motions for summary judgment, Congregacion highlights that its Certificate of Incorporation expressly states that it is formed for "[r]eligious preaching, the teaching of Christian morals, the fostering and development of charity works, the education of missionaries and the formation of missions, the building and dedication of temples to worship God. . ." Thus, Congregacion argues that it is "organized exclusively for religious purposes."






In response to plaintiff's contentions, defendant's counsel argued that plaintiff's counsel "lacks personal knowledge of and is not competent to testify" regarding those provisions.[13]

However, "[d]iscovery materials . . . including such unsworn materials, . . . may be submitted in support of or in opposition to a motion without further certification or affidavit." Pressler & Verniero, Current N.J. Court Rules (2025), cmt. to R. 1:6:6 (citing Baldyga v. Oldman, 261 N.J. Super. 259 (App. Div. 1993)).  Our Appellate Division has expressly stated that answers to "interrogatories . . . form[] part of the assembled proofs and were properly considered with the other evidence in passing on the motion. . . ."  Pabon v. Hackensack Auto Sales, Inc., 63 N.J. Super. 476, 494 (App. Div. 1960).  Thus, a trial court is permitted to consider and evaluate discovery materials submitted in support of, and in opposition to, a motion to gauge whether genuine issues of material fact are disputed.

Here, the motion record contains the affidavit of Leonardo Sanchez-Estrada, Congregacion's First Vice President, as well as sworn deposition transcripts and plaintiff's answers to interrogatories duly signed and certified by Elisha Mayol, Second Vice President of Congregacion.  Mr. Sanchez-Estrada's affidavit recites that "all factual assertions and documents contained in . . . [p]laintiff's Statement of Material Facts, are true and accurate."  The material statements of fact expressly state that, "Congregacion . . . is organized exclusively for religious purposes."  Moreover, the material statements of fact recount that Congregacion's purposes, as set forth in its Certificate of Incorporation, are to promote and carry out "religious preaching, the teaching of Christian morals . . . the education of missionaries and the formation of missions. . . ."

---

[13] During oral argument, defendant's counsel acknowledged that Mr. Sanchez-Estrada's certification, submitted in plaintiff's sur-reply, adequately supported Congregacion's material statements of fact.  Thus, defendant conceded that Congregacion satisfied the organizational and profit tests under Paper Mill Playhouse, 95 N.J. at 506.






In addition, in response to interrogatory 2, Ms. Mayol stated that "taxpayer was incorporated in the State of New Jersey, on March 9, 1984 pursuant to the provisions of Title 15A (the 'New Jersey Nonprofit Corporation Act')." Further, in response to interrogatory 3, Ms. Mayol certified that "attached [are Congregacion's] Certificate of Incorporation and By-Laws."

In adopting our court rules, the Supreme Court expressly stated that a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the pleading, but must respond by affidavits . . . setting forth specific facts showing that there is a genuine issue for trial." R. 4:46-5 (emphasis added); see Cortez v. Gindhart, 435 N.J. Super. 589, 606 (App. Div. 2014) (quoting Horizon Blue Cross Blue Shield of N.J. v. State, 425 N.J. Super. 1, 32 (App. Div. 2012) (concluding that "[t]o defeat a motion for summary judgment, the opponent must 'come forward with evidence' that creates a genuine issue of material fact."). A party opposing summary judgment does not create a genuine factual issue by asserting general denials. Carroll v. N.J. Transit, 366 N.J. Super. 380, 388 (App. Div. 2004). "'[C]onclusory and self-serving assertions' in certifications without explanatory or supporting facts will not defeat a meritorious motion for summary judgment." Hoffman v. AsSeenOnTV.com, Inc., 404 N.J. Super. 415, 425-26 (App. Div. 2009).

Here, the court finds that defendant has offered no meaningful facts or evidence that contradict plaintiff's proofs or that support defendant's self-serving rejection of Congregacion's claim that it is organized exclusively for religious purposes. Defendant has offered no documents or support demonstrating that Congregacion's Certificate of Incorporation recites something different than what it plainly states. Rather, the court finds that the motion record offers clear uncontroverted factual evidence that Congregacion is the New Jersey chapter of Mita, exclusively offering Christian religious worship to its members, teaching and fostering Christian values and






morals, engaging in charitable endeavors, and providing spiritual guidance and assistance to its congregants. Accordingly, the court finds that Congregacion satisfies the organizational test.

2. Profit test

Under N.J.S.A. 54:4-3.6, "[the owner's] operation and use of its property must not be conducted for profit." See Paper Mill Playhouse, 95 N.J. at 506. However, an organization's "nonprofit charitable organization pursuant to I.R.C. § 501(c)(3), is not, in and of itself, enough to qualify . . . for property tax exemption under N.J.S.A. 54:4-3.6." Essex Properties Urban Renewal Associates, Inc. v. City of Newark, 20 N.J. Tax 360, 368 (Tax 2002). See Black United Fund v. East Orange, 17 N.J. Tax 446 (Tax 1998); Pompton Lakes Senior Citizens Housing Corp. v. Pompton Lakes Bor., 16 N.J. Tax 331 (Tax 1997); Third Ave., Inc. v. City of Asbury Park, 16 N.J. Tax 174, 182 (Tax 1996).

The institution, and its buildings and land, may not be conducted for profit. See Paper Mill Playhouse, 95 N.J. at 506. However, that does not mean that an otherwise charitable, benevolent, or religious use becomes a non-qualifying for-profit use if the use "'is supported partly by fees and charges received from or on behalf of beneficiaries using or occupying the buildings . . . provided, [that] the building is wholly controlled by and the entire income therefrom is used for said charitable, benevolent, or religious purposes. . . .'" Girls Friendly Soc. of Pennsylvania, 26 N.J. Tax at 571 (quoting N.J.S.A. 54:4-3.6). "Even where a particular operation has produced a profit, the tax-exempt status has not been lost when the excess funds have been applied to carry out the organization's beneficent policies." Boys' Club of Clifton, Inc., 72 N.J. at 403-404; see also Kimberley School v. Town of Montclair, 2 N.J. 28 (1949); Trenton v. N.J. Div. of Tax Appeals,






65 N.J. Super. 1 (App. Div. 1960).

Here, in support of its motions for summary judgment, Congregacion maintains that:

> the [s]ubject [p]roperty is put to no other use besides the religious uses described above and is not used for any for-profit uses. Plaintiff raises funds solely through its membership by such means as the sale of food to members after services, and at special activities such as family days, Mother's Day, Father's Day and other such events among the members. The income generated in this manner is used to pay the Plaintiffs various operational expenses.

In response to the motions, defendant's counsel again maintained that plaintiff's counsel could not offer evidence regarding plaintiff's activities.[14] However, defendant offered no meaningful facts or evidence that Congregacion uses the funds that it generates for something other than its non-profit religious goals, missions, and objectives. Moreover, defendant did not demonstrate that any part of Congregacion's revenue can be traced into any individual's personal pocket. See Trenton v. N.J. Div. of Tax Appeals, 65 N.J. Super. at 12 (concluding that "the crucial inquiry is, 'Who gets the money?' If we can trace it into someone's personal pocket . . . the college is not entitled to tax exemption. . . ."). Again, "'conclusory and self-serving assertions' . . . without explanatory or supporting facts will not defeat a meritorious motion for summary judgment." Hoffman, 404 N.J. Super. at 425-26.

Therefore, the court is satisfied based on its review of the motion record, including the discovery materials, affidavits, material statements of facts, and exhibits that Congregacion's operations and its use of the subject property are not conducted for profit. The motion record discloses that Congregacion raises money for its not-for-profit religious operations through donations from its congregants, from the sale of food in its Pennsauken church cafeteria to church

---

[14] During oral argument, defendant conceded that Congregacion satisfied the organizational and profit tests.






members after religious services, as well as other fundraising activities including raffles, family days, Mother's Day, Father's Day and other special events. However, the monies raised are used to advance its religious goals and mission, and to offset Congregacion's operational expenses. Moreover, in the material statements of facts, Mr. Sanchez-Estrada certifies that the subject property "is not used for any for-profit uses. Plaintiff raises funds solely through its membership by such means as the sale of food to members after services, and at special activities . . . The income generated . . . is used to pay [p]laintiff's various operational expenses." Moreover, in response to interrogatory 10, Congregacion's Vice President certified that "[t]he subject property does not generate income," and in response to defendant's interrogatory 14(b), she certified that "[n]o business was conducted at the property."

Accordingly, the court finds from the undisputed factual evidence set forth in the motion record that Congregacion's operation and use of the subject property is not conducted for profit, thereby satisfying the profit test.

3.    Actual use

The third criteria employed to gauge whether a property is entitled to an exemption from local property tax is its actual use. Importantly, N.J.S.A. 54:4-3.6 imposes no bright-line test on the quantum or degree of the use. Christian Mission John 316 v. Passaic City, 243 N.J. 175, 191 (2020); Roman Catholic Archdiocese of Newark v. City of E. Orange, 18 N.J. Tax at 655; Trustees of Presbytery of Newton, 28 N.J. Tax at 319.

However, when faced with gauging the actual use of residential property, our courts have adopted a two-prong analysis: "first, whether the residence is predominantly used as an integral part of the operation of the exempt organization, . . . and second, whether the provision of the residence is reasonably necessary for the proper and efficient operation of the exempt






organization." City of Long Branch v. Ohel Yaacob Congregation, 21 N.J. Tax 268, 272 (App. Div. 2003); Clinton Twp. v. Camp Brett-Endeavor, Inc., 1 N.J. Tax 54, 60 (Tax 1980); St. Ann's Catholic Church v. Hampton Borough, 14 N.J. Tax 88, 95 (Tax 1994); Pompton Lakes Sr. Citizens Hous. Corp. v. Pompton Lakes Borough, 16 N.J. Tax 331, 338 (1997).

Only after the court is satisfied that the predominant use of the residence is an integral part of the organization's operation, must the court turn to a determination whether it is "reasonably necessary for the proper and efficient operation of the exempt organization." Camp Brett-Endeavor, Inc., 1 N.J. Tax at 60. Importantly, when applying the reasonably necessary standard, our Supreme Court has cautioned that the term "'[n]ecessary' . . . does not mean absolutely indispensable. Rather it refers to what is reasonably necessary to accomplish the institution's purposes." Boys' Club of Clifton, Inc. v. Jefferson Twp., 72 N.J. 389, 401 (1977). Thus, in conducting the second inquiry, our courts have focused on whether the property at issue was "reasonably necessary for the proper and efficient operation of" the exempt purpose; Monmouth Med. Ctr., 138 N.J. Super. at 533; and how the use of the building serves the needs of the organization. Boys' Club of Clifton, Inc., 72 N.J. at 401-02.[15]

Here, in analyzing whether the residential use of the subject property is integral to Congregacion's operations, the court must ascertain whether the subject property is sufficiently incorporated into Congregacion's religious goals and purposes or is it merely a convenience. See Princeton Twp. v. Tenacre Found., 69 N.J. Super. at 564; Long Branch v. Monmouth Medical Ctr., 138 N.J. Super. at 533; Camp Brett-Endeavor, Inc., 1 N.J. Tax at 60.

---

[15] However, the organization's use of the building need not strictly comply with local ordinances to be conferred a tax exemption. See Society of the Holy Child Jesus, 418 N.J. Super. at 368 (concluding that N.J.S.A. 54:4-3.6 imposes no requirement that "the property be [put to] a lawful use under the municipality's zoning ordinance in order to qualify for tax exemption.").






In this regard, Congregacion highlights that its By-Laws charge "[t]he Spiritual Leaders of the congregation, as part of their Christian ministry and mission load [with] responsibility for the development, organization, growth, expansion and administration of . . . Congregacion Mita in Puerto Rico and abroad, as well as the spiritual needs of the hundreds of thousands of [its] Member[s]." Moreover, under the express terms of Congregacion's By-Laws, its missionaries are "subject to the supervision of the Spiritual Leader."

Thus, Congregacion argues that the subject property is instrumental and integral to its purposes and goals of religious preaching and teaching Christian morality because its spiritual leader is required to lead missions to grow and expand "Congregacion Mita in Puerto Rico and abroad." Moreover, Congregacion emphasizes that the subject property enables the spiritual leader "[t]o facilitate her responsibilities" which include "the care of the spiritual needs of the hundreds of thousands of . . . Congregacion['s]" congregants in New Jersey and the northeast United States.

Plaintiff further emphasizes that during the missions and periods of residency in the subject property, the spiritual leader "conducts virtual religious services via Zoom or YouTube, . . . [for] her parishioners in New Jersey, New York and around the world." Moreover, these missions permit Congregacion's spiritual leader to conduct meetings with its missionaries and the "ministries of Congregacion Mita from New Jersey, New York, Connecticut and elsewhere in North America, meet[] with ordained pastors, coordinate[] religious services and activities, and convene[] various meetings at the [s]ubject property. . . ." According to its By-Laws, these missionaries "have the responsibility of evangelization according to the vision of the Spiritual Leader and Christian, moral and missionary mission of . . . Congrega[c]ion."

Additionally, when its spiritual leader leads a mission, she brings with her a substantial number of church representatives comprising "various pastors, ministers, evangelists,






missionaries, deacons and deaconesses to perform local ministry in New Jersey, New York and Connecticut." Accordingly, Congregacion argues that the subject property enables Congregacion to accommodate the various missionaries and church leaders and serves as a "central location" to conduct church business and related activities during the missions.

In response, defendant argues that "[n]o evidence [was] provided to establish a connection between [Congregacion's spiritual leader's occasional] . . . use of the subject property and the exempt purposes of plaintiffs religious organization." Defendant contends that "plaintiff provided no evidence . . . establishing . . . needs of its congregants in New Jersey, . . . Nor does plaintiff provide evidence demonstrating how the activities conducted at the subject property further the proper and efficient operation of its religious organization."

Rather, defendant asserts that "plaintiffs use of the subject property's residential accommodations is merely a matter of convenience; the use has not been shown to be an integral part of the religious organization and reasonably necessary to the religious organization's proper and efficient operation."

As keenly observed by our Appellate Division, application of the exemption to residential property "in cases where there is not year-round occupancy of the subject property will depend on the facts of each case." City of Long Branch, 21 N.J. Tax at 272. Thus, whether the subject property's actual use, as of the October 1, 2021 and October 1, 2023 valuation dates, was integral to Congregacion's operations must be measured against the undisputed and uncontroverted facts presented in the motion record, and if, or how, those facts demonstrate that the mission, goals, objectives, and purposes of the religious organization were furthered or served.

The court agrees with defendant that, Pastor Santana's permanent occupancy and use of the subject property standing alone does not entitle plaintiff to an exemption from local property






tax under N.J.S.A. 54:4-3.6. However, the court finds that the defendant's argument focusing on Pastor Santana's use of the subject property, fails to adequately consider the scope and entirety of the other uses to which the subject property is devoted in fostering Congregacion's religious goals, objectives, and purposes.

As stated above, Congregacion is a chapter of the Mita Christian church, a worldwide religious organization. As such, according to its organizational documents and By-Laws, it observes and "recognizes the figure of the [s]piritual [l]eader as provided in . . . Mita's Precepts Code." Moreover, one of Congregacion's principal objectives is "religious preaching, the teaching of Chistian morals, . . . the education of missionaries and formation of missions. . . ." Under its By-Laws, its spiritual leader, "establishe[s] doctrines, religious interpretations and rules governing the Congregation, [and] decides everything theological." In fulfilling these responsibilities, the spiritual leader's duties include leading missions to foster "the development, organization, growth, expansion and administration of . . . Mita in Puerto Rico and abroad, as well as the care of the spiritual needs of the hundreds of thousands of Member's Congrega[c]ion."

In the instant matters, the uncontradicted facts reveal that the spiritual leader conducts no less than two missions annually to the subject property and exclusively resides there during such missions. During these missions, the spiritual leader holds virtual religious services in the subject property that are broadcast to congregants via Zoom or YouTube. Additionally, the uncontradicted record further discloses that these missions are designed to promote the growth and expansion of its church, enabling the spiritual leader to conduct meetings with missionaries, holding meetings and conferences with church officials, and interact with congregation members, and pastors, ministers from other local Mita church chapters. Therefore, the subject property permits Congregacion's spiritual leader to engage in part of the growth, expansion, and supervisory






functions with which she is charged. These missions and the role that the subject property plays in furthering these missions is vital and integral to Congregacion's religious goals and purposes. In essence, the subject property serves as the nerve center of church operations during the spiritual leader's missions.

Although having a residential structure in Cliffside Park is not required under Congregacion's organizational documents, or to fulfill its religious goals, the subject property's location affords the spiritual leader appropriate and reasonable access to missionaries, pastors, church officials, and congregants from Mita's Pennsauken, New Jersey, Hastings-on-Hudson, New York, Bristol, Connecticut, as well as other, northeast United State church chapters. Importantly however, the integral test does not require a showing that the property's purpose and function cannot be performed elsewhere. Rather, the integral test requires only that the actual use of the property is an integral component of the exempt organization's operations. For the reasons set forth above, the court finds that in these matters it is.

Moreover, the undisputed factual record reveals that on these missions the spiritual leader is accompanied by between fifteen to twenty missionaries (pastors, deacons, ministers, evangelists, and church representatives). According to Congregacion's By-Laws, these missionaries are charged with fostering the "evangelization . . . of the [s]piritual [l]eader and Christian, moral and missionary mission" of its church. During the missions, the church missionaries reside in bedrooms in the subject property, meet with other church officials, and conduct church business in the subject property.

In addition, the uncontroverted motion record reveals that the subject property is also used as a temporary residence of Mita's supervising pastor, and Mita's internal auditor, several times a year during their trips to New Jersey and the northeast United States, to carry out their audit,






oversight, and supervisory functions. Moreover, the motion record further discloses that the subject property serves as a temporary residence for "novice" men and women who are following the path of becoming ordained pastors for Congregacion.

Thus, the court finds that the provision of the subject property as a temporary residence and a center of church operations during the spiritual leader's annual missions and for church missionaries, and by other church representatives throughout the year, to enable them to perform their church duties and jobs, is reasonably necessary for the proper and efficient operation of Congregacion.

Accordingly, for the foregoing reasons, the court finds that the predominant use of the subject property is integral to Congregacion's operation, and is reasonably necessary for Congregacion's proper and efficient operation

### III. Conclusion

Accordingly, for the above-stated reasons, the court finds that Congregacion has satisfied the requirements for exemption under N.J.S.A. 54:4-3.6. Therefore, contemporaneous herewith, the court shall enter judgments granting the subject property an exemption from local property taxes for the 2022 and 2024 tax years.

Very truly yours,

Hon. Joshua D. Novin, J.T.C.




